### 10198

#### HOLLIDAY v. JORDAN.

#### (99 S. E. 465.)

1. BOUNDARIES—SALE PURSUANT TO PLAT—QUESTION FOR JURY.—In suit involving issue whether line represented by a plat made for the parties when plaintiff's father and mediate grantor purchased tract owned by defendant, or line represented by muniments of title of trust owned by plaintiff, is true division line between tracts, whether sale to defendant was made under said plat or otherwise *held* for the jury.

2. BOUNDARIES—INTENT OF PARTIES—QUESTION FOR JURY.—If plaintiff's father and mediate grantor had sold land claimed by defendant to defendant, and put him upon it, and delivered to him as sole muniment of title a plat, it would be for the jury to find if the parties intended by the transaction to convey all the land described in the plat.

3. DEEDS—CONSTRUCTION.—Effect ought to be given to all the words of a deed.

4. DEEDS—AMBIGUITY—SURROUNDING CIRCUMSTANCES.—A description of the land conveyed by the instant deed involving a latent ambiguity, the jury was entitled to know all the circumstances which surrounded the parties when the deed was executed.

5. TRIAL — INSTRUCTION — IGNORING DEFENSE.—In suit involving issue whether line represented by a plat made for the parties when plaintiff's father and mediate grantor purchased tract now owned by defendant, or line represented by muniments of title to tract owned by plaintiff, is true line between tracts, *held*, that instruction given for plaintiff excluded legal effect of the 10-year adverse possession pleaded by defendant, and therefore misdirected the jury on a vital matter.

Before SPAIN, J., Horry, Spring term, 1917.   Reversed.

8—112

Action by Flora J. Holliday against Sarah Agnes Jordan. Judgment for plaintiff, and defendant appeals.

The following is the third assignment of error:

(a) His Honor erred, it is respectfully submitted, in granting the plaintiff's fourth request to charge, which was as follows:

" 'Generally a survey is to be carried to its calls, unless there be actual lines on the ground excluding them, when such lines, constituting the survey, will control the calls; but when there are no actual monuments or lines called for, by which the closing line is to be fixed or ascertained, and no line on the ground, the survey is to be closed by a direct line between the termini of the lines on the ground, or as fixed by the course and distances returned to ascertain these termini. When all the calls cannot be observed, but the beginning point is established, lines should be run in both directions as far as possible, and the gap closed as seems most consistent with all the calls. In locating boundary lines, a line actually marked must be adhered to, although it varies from the course called for, and is not a right line from corner to corner.' I charge you that in connection with what I have already said in reference to the rules by which you will be governed in locating these land lines"—in that, in charging said request, his Honor charged the jury that: "When there are no natural monuments or lines called for, by which the closing line is to be fixed or ascertained, and no lines on the ground, the survey is to be closed by a direct line between the termini of the lines on the ground, or as fixed by the courses and distances returned to ascertain these termini"— without qualifying said statement in any way; whereas, it is respectfully submitted that the rule thus enunciated by his Honor is a rule adopted for the convenience of surveyors for establishing lines, and in closing gaps where the data is vague and indeterminate, and where no question of adverse possession is raised, and that said rule can in no wise be

employed to disturb or overthrow legal rights vested in or acquired by adjacent landowners, by adverse possession or otherwise.

(b) It is respectfully submitted that said charge was erroneous in this case, because the effect of applying the rule enunciated by his Honor was, by the uncontradicted testimony, to take land from the defendant to which she was entitled by adverse possession and presumption of a grant, under the 10-year and the 20-year statutes, and to vest same in the plaintiff.

*Mr. James W. Johnson* and *Messrs. Stevenson & Prince*, for appellant, submit: *That the delivery to Jordan of the Levi Legette plat with the deed established, as a matter of law, the Hughes line, and left nothing for the consideration of the jury:* 92 S. C. 65; Cyc., vol. XIII, 635.

*Mr. H. H. Woodward,* for respondent, submits: *It is the duty of the Judge to construe a deed as written:* 79 S. C. 438; 81 S. C. 307; 82 S. C. 441. *His Honor correctly charged the jury:* "*Generally, a survey is to be carried to its calls, unless there be actual lines on the ground excluding them, when such lines constituting the survey will control the calls; but when there are no actual lines or monuments called for, by which the closing line is to be fixed or ascertained, and no line on the ground, the survey is to be closed by a direct line between the termini of the lines on the ground, or as fixed by the courses and distances, returned to ascertain these termini. When all the calls cannot be observed, but the beginning point is established, lines should be run in both directions as far as possible and the gap closed as seems most consistent with all the calls. In locating boundary lines a line actually marked must be adhered to, although it varies from the course called for, and is not a right line from corner to corner:*" 5 Cyc. 887, citing 1 Apeer 183; 1 Hill 12; 1 McCord 215; McCord 167; 6 Tex. App.

312; 25 S. W. 1079; 5 Cyc. 884; 2 Nott & McCord 99; 1 Hill· 8. *The form of the verdict found by the jury is correct:* 76 S. C. 170.

May 14, 1919.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The case involves the location of a line betwixt a parcel of land on the north and a parcel of land on the south. That parcel on the north was granted in the early history of the State to Cedar Hughes, and it is now owned by the plaintiff, Holliday. It will be referred to as the Hughes tract. That parcel on the south was also granted to Dawsey, and it is now owned by the defendant, Jordan. It will be referred to as the Dawsey tract. It does not appear when the Hughes grant was made; the Dawsey grant was made in 1789.

The location puts in issue some 150 acres of land, said by one of the briefs to be chiefly in a wooded swamp, now and for many years heretofore. Jordan bought the Dawsey tract in 1874 from J. W. Holliday, the father and mediate grantor of the plaintiff. Holliday had purchased the Dawsey tract from Kirton, and Kirton had purchased it in 1866 from McQueen, at which last mentioned conveyance one Legette, a surveyor, made a plat of it for the parties.

The alleged refusal of the Court to correctly charge the jury about the effect of that plat is, we think, the major issue of the case. A meager sketch of it is attached to this opinion and will be reported. Courses and distances and points and other matters not now material have been omitted in the sketch.

The issue tried was in effect whether the true line of division is A, B, C, which is the contention of the defendant, or A, H, D, which is the contention of the plaintiff. The former line is that represented by the Legette plat; the latter line is that represented by the muniments of title of the Hughes tract.

Mr. Johnson, the civil engineer who testified for the plaintiff, in referring to the Legette plat, said that "This map, when located, goes over and across the southern boundary of the Hughes tract, * * * making a lap on the Hughes land of about 150 acres."

Mr. Johnson further testified: "While we are sure that Levi Legette did actually locate the northern boundary of the map made by him, and that he did locate it very near the position of the line shown by dashes heretofore referred to, we have not seen any reason for that location, nor have we been able to find any one who ever remembered its observation or its existence, and it is impossible to find the physical line there now."

The other engineer, Mr. Adams, designated to make the survey with Mr. Johnson, testified: "Mr. Jordan (manifestly for Johnson) and myself agreed that the dotted lines

as shown on our plat running north of the Middle Bay
Island through stake down was approximately the location
of the Legette plat.  We said approximately, because the
only point on this northern line of the Legette plat which we
could find was the stake down above referred to."

The witness further said: "This Legette plat is one of the
most complete and accurate plats that I ever saw (that is,
old plat) in regard to his topography; this is particularly the
case just after crossing the neck (or bay) just east of the
stake down; if the line were shifted north or south a distance
of about 100 feet, it would in either case go into bays, which
the plat very clearly shows that it does not enter."

The witness, Kirton, testified that he sold the land now
owned by Jordan to J. W. Holliday; that the same was con-
veyed to him by McQueen in 1866; that Legette made an
actual survey of the land in question, going all around the
lines, and noting marks as he found them and as they appear
on his plat; and that the Legette plat represents the land he
sold to Holliday.  The import of the Legette plat, therefore,
is of prime importance.

The defendant testified that on the day in which Holliday
delivered to her husband, William, a deed to the land, he
delivered along with it the Legette plat and the McQueen
titles.  The plaintiff's counsel has not denied that; nor did
nor could the plaintiff's counsel object to the competency of
the plat.  It is admitted in the brief of the plaintiff's counsel
that the Levi Legette plat covers the Jordan land, and also
covers other land which J. W. Holliday did not own at the
time, and he held this plat and handed it to the grantee for
what it might be worth in locating the southern and not the
northern boundary of the land that he owned and disposed
of to William Jordan.

If Holliday had sold the land to Jordan and put him upon
it without the execution of a paper title, and had then deliv-

ered to him the Legette plat as his sole paper muniment of title, then it would be for the jury to find if the parties intended by the transaction to convey all the land described by the plat. In such a case the plat would, or course, not be title; but it would be of color of title. *Simmons v. Parsons,* 2 Hill 492, note; *Gray v. Bates,* 3 Strob. 504; *Slice v. Derrick,* 2 Rich. 629; *Thompson v. Brannar,* 14 S. C. 550; *Polson v. Ingram,* 22 S. C. 548; *Duren v. Strait,* 16 S. C. 469.

The case is not altered, when the uncertain description in the deed is considered, that Holliday contemporaneously executed a deed to Jordan wherein no mention is made of the Legette plat. The question here, and in every such case, is: What did the parties intend when the deed was made?

It is true that the intention must be gathered from the words the parties have used, if so much is possible. *Holden v. Alexander,* 82 S. C. 441, 62 S. E. 1108, 64 S. E. 400. The description of the granted premises is thus set out in the deed: "All that tract of land containing two hundred and fifty acres, situate in the State and county aforesaid, on the east side of the public road leading from Conway Borough to Gallivant's Ferry, about three miles from said ferry, and on and over Wild Cat Bay, waters of Little Pee Dee River, the same being the tract of land conveyed to me by W. H. Kirton in a deed bearing date of March 13, 1866, and bounded on the east side by lands sold by D. J. McQueen to Bryant Moore, on the north by lands known as Hughes lands, on the west by Mrs. M. A. Johnson's land, formerly known as the Lambert lands, on the south by a portion of the same land now owned by J. W. Holliday, running from a stake corner recently made by J. C. Beaty in a westward direction till it joins to Mrs. M. A. Johnson's land; it being a portion of a tract of land granted by Wm. Dawsey, February 25, 1789, for seven hundred and fifty acres, and the same being conveyed by sundry deeds and titles until conveyed to the said D. J. McQueen."

The land is therein identified as "being the tract of land conveyed to Holliday by W. H. Kirton." As before stated, Kirton testified that Legette surveyed the land for him in 1866, and executed then the plat in question. The land is further identified as being "on and over Wild Cat Bay." The Legette plat illustrates that topography. The testimony of Adams thereabout has been quoted. The line contended for by plaintiff falls short of Wild Cat Bay, so that it is not included in the Jordan tract, but falls to the Hollidays.

There is nothing in the Legette plat which varies or contradicts the description in the deed; on the contrary, the one conforms and illustrates the other. The only words of the description upon which the plaintiff relies are these: "On the north by lands known as Hughes lands." But the Legette plat illustrates the identical boundary so that in such feature the plat and the deed accord.

It is true that the granted parcel must be bounded on the north by the Hughes lands; the deed and the Legette plat require so much. If the true Hughes boundary line be illustrated by the Legette plat, then the disputed parcel will fall to Jordan.

It is a familiar rule of construction that effect ought to be given to all the words of a deed. From a consideration of these parts of it before referred to, it is manifest that the parties intended to take in Gapway Bay, and intended to convey the identical tract of land which Kirton had conveyed to Holliday.

It is not suggested that the Legette plat is a fiction; it is not suggested that it is at all inaccurate; it was admitted by the witness, Johnson, that, if laid down upon the ground, the boundaries of that plat would include the disputed area; if, therefore, that plat shall measure off the land Holliday sold to Jordan, then manifestly the right is with Jordan.

Against the Legette plat, which the plaintiff altogether rejects, reliance is put upon ancient deeds and plats relevant

to both the Hughes and the Dawsey tracts, and upon arti-
ficial marks upon the terrain.   And to these evidences the
charge,. in necessary effect, was directed to guide the jury.
In these circumstances the necessary issue was between the
Legette plat and the evidences last mentioned.   And the
law which ought to have governed the issue is that stated in
*Stephens v. Long,* 92 S. C. 71, 75 S. E. 530, point 4.

The description of the land conveyed by the instant deed
involves a latent ambiguity, and the jury was entitled to
know all the circumstances which surrounded the parties
when the deed was executed, the most potent of
which was the Legette plat, along with the declara-
tion of Holliday to Jordan when the plat was deliv-
ered into Jordan's hands.   And the issue ought to have been
submitted to the jury whether the sale and purchase was
made under the Legette plat or otherwise.

The next issue arises out of the plaintiff's fourth and
charged request.   Let it be reported.   That request was
directed to the testimony of Mr. Johnson that run-
ning by the Hughes plat and grants, and going in
opposite directions, he reached two marked points on
the lines and that there were no calls on the muniments of
title to connect these two marked points.

The appellant does not challenge the abstract correctness
of the request; the only contention is that the request
excludes the legal effect of the ten-year adverse possession
pleaded by the defendant and testified to by her witnesses.
Thereabout the Court charged the jury:

"Now, before a person can recover under a ten-year pos-
session, the possession must be continuous.   In other words,
she. cannot tack her possession onto somebody else's posses-
sion to make out the period of 10 years.   Now, if you find
that she went into possession under a deed from William
Jordan to her bearing date January 9, 1908, if she went into

possession under that deed, then she could not recover under a 10-year period, because she has not been in possession for 10 years."

But the defendant's deed was dated the 9th of January, 1899, and if she went in under it, and held adversely continuously for 10 years, then her defense of 10 years' adverse possession was made out.

The Court thus misdirected the jury about a vital matter, and that, too, warrants a reversal of the judgment.