7427

STATE v. DRIGGERS.

1. SELF DEFENSE.—One who shoots another while sitting in a wagon holding a gun in her lap, but making no effort to use it, the deceased some time previous to the killing having used profanity toward him and having been guilty of misconduct and violence to him, is not entitled to the plea of self-defense, especially when he was in no peril when he shot.

2. EVIDENCE—INSANITY—HARMLESS ERROR.—On the issue of insanity, the entire conduct of the alleged insane including words spoken and the manner of speaking, is competent, but ruling them out here on ground that they were self-serving declarations is not injurious to defendant, as like evidence to that ruled out had been previously admitted.

3. CHARGE—CIRCUIT JUDGE.—Statements made by the trial Judge in ruling on objections to evidence held not to amount to such expression of opinion on the merits of the defense of insanity as to indicate the Judge was a participant in the consideration of that question of fact, but the Court thinks it is better for the trial Judge not to indulge in questionable comments.

4. WITNESS.—TRIAL JUDGE may properly elicit from a witness any evidence tending to show the truth of the matter in controversy.

5. INSANITY.—The charge here not only covered insanity from *delirium tremens,* but of any other form resulting from excessive use of liquor as an excuse for crime.

6. CHARGE.—The trial Judge is not required to single out and emphasize any part of the evidence on any issue.

7. IBID.—MURDER—MANSLAUGHTER.—The homicide being admited, it is not error to instruct that mere drunkenness or anger would not reduce a homicide from murder to manslaughter, nor would the deceased cursing defendant or engaging in a fight with him constitute such legal provocation as would reduce a killing afterward done from murder to manslaughter. Nor is such instruction a charge on the facts.

Before GARY, J., Clarendon, February, 1909.   Affirmed.

Indictment against J. Frank Driggers for murder of Mamie Boseman.   Defendant appeals from sentence.

*Messrs. Davis & Weinberg,* for appellant, cite: *Extent of inquiry in insanity:* 9 Ency., 717, 718. *Improper remarks by trial Judge:* 81 S. C., 379; 73 S. C., 383; 80 S. C., 383. *Charging requests:* 39 S. C., 108; 33 S. C., 117; 32 S. C., 43.

*Solicitor P. H. Stoll* and *Mr. S. Oliver O'Bryan,* contra.

February 8, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant, J. Frank Driggers, was convicted of the murder of his sister, Mrs. Boseman. As the verdict embraced a recommendation to mercy, the Court imposed a sentence of life imprisonment. There is no need to set out the evidence in its revolting details, for the questions made by the appeal will be sufficiently clear from a very brief statement of the undisputed facts. The defendant and his sister, Mrs. Boseman, previous to the homicide, had quarrelled about the balance claimed by Mrs. Boseman to be due her on a trade of a horse and some cattle. On 26th December, 1908, Henry Boseman, his wife, Mary Boseman and Frank Driggers, Jr., a young son of the defendant, went in a wagon to the home of defendant. They carried wine and gin, and the defendant already had liquor

at the house. Boseman and young Driggers went hunting, leaving Mrs. Boseman with the defendant and his family. The evidence is conflicting as to the conduct of the defendant and his sister during the day. They both drank, and after Boseman returned from the hunt, went out on the piazza engaged in a violent quarrel, either striking or menacing each other. They were then separated, and Boseman induced his wife to get into the wagon with him. As they were leaving, there was a challenge to have satisfaction in the public road. The evidence is conflicting as to whether Boseman or the defendant offered the challenge.

But, according to the evidence on both sides, after Boseman and his wife had started away in the wagon, the defendant sent his little daughter for his gun. On her return with the gun, he sent her back for another loaded shell, walked out of his house some distance to the road, and deliberately shot his sister to death. She had a gun in her lap, but made no effort to use it.

Assuming that the deceased during the day used all the profanity, and was guilty of all the misconduct and violence to the defendant, attributed to her by the members of his family, all that was at an end; and after it was ended, the defendant pursued, and when in no peril whatever, committed the homicide. It is too evident for discussion that the law of self-defence has no application to a homicide committed under such circumstances. There is no reason, therefore, to discuss the alleged errors in the charge on the subject of self-defence, for the defendant had no right to any instructions on that subject. The Circuit Judge, nevertheless, charged the law of self-defence, as the plea was set up, and we are unable to discover any error in the charge.

For the same reason that it was affirmatively shown beyond all controversy by the evidence offered by the defendant, that he was in no peril whatever when he shot, there would have been no error in excluding testimony of

Frank Driggers, Jr., as to the language used by the deceased
in insisting that she would go to the house of defendant.
But the exception on this point was taken under a misapprehension, for the evidence was not excluded, the witness having testified: "She said, 'I am going to jump out and carry
my gun with me, if you don't,' and I said, 'I will go, if
you go.' Q. Did he drive in? A. Yes, sir."

The real defense was that the defendant at the time of
the homicide was in such a state of delirium from excessive
drink that he was irresponsible. In support of this
defense, J. D. Driggers, the brother of the defendant, gave this account of a visit to his house on
the night of 24th December, before the homicide on the
morning of the 26th December:

"And when I went into the house, I found him locked
up in the house, the key in the door on the outside. I carried Dan Driggers in with me, and I wouldn't advance right
on him. I saw him sitting in the corner of the house with
his gun across his lap. I pushed the door half·open, and
I said, 'Frank, what in the world is the matter?' And he
looked straight at me and said, 'Is that Major?' And I said,
'Yes, this is Major.' And he said, 'What is the matter
with you, Melvin Croton?' That is a colored man that lives
near him." At this point, the Court stopped the witness,
holding this declaration of the defendant to be in his own
favor and incompetent.

There is no doubt of the correctness of the general rule
stated by the Court, but we think on the issue of insanity
the entire conduct of the defendant, including words spoken
by him and the manner of his speech, is competent. Wild,
foolish or irrelevant speech is as much evidence of most
forms of insanity as violent or unreasonable actions and
unnatural appearance. One may be feigned as well as the
others, and there is no reason for the rejection of one that
would not apply with equal force to the others. Such
speech of a party is not subject to the objection that it is

a declaration of the defendant in his own favor, for evidence of it is not received as tending to prove any act or intention of the party, but merely as an indication of his mental condition. No doubt there should be some preliminary evidence of mental aberration, indicating to the Court that the speech or conversation of the person accused is tendered in support of a substantial plea of insanity, and not for the purpose of getting in evidence the declarations of the defendant in his own favor. The authorities on the point are not unanimous, but such evidence was held admissible in *People* v. *Nino* (N. Y.), 43 N. E., 853; *McLean* v. *State,* 16 Ala., 673; *Norwood* v. *Marrow* (N. C.), 4 Dev. & Bat., 442. It is true that the North Carolina Court, in the latter case of *State* v. *Vann,* 82 N. C., 631, held such speech and conversation incompetent, but in the still more recent case of *McLeary* v. *Norment,* 84 N. C., 235, the principle of *Norwood* v. *Marrow* was reaffirmed.

The defendant, however, was not injured by the ruling of the Circuit Judge on this point, for the evidence of his remarks to Driggers, and also to the witness, Lesesne, had been adduced before the objection was made, and was not withdrawn from the consideration of the jury. Besides, there was evidence from other witnesses of foolish remarks from the defendant.

The second exception is as follows: "That his Honor erred, it is respectfully submitted, in frequently and repeatedly throughout the trial responding to objections to the introduction of testimony by the use of such expressions as, 'I suppose he is leading up to brain-storm or something like that;' 'Do you contend that a drunken debauch would excuse a homicide?' 'Do you want a man to prove his own lunacy?' Thereby clearly and plainly indicating to the jury his opinion of the defense of insanity, interposed by the defendant." We have examined with care the connection which these expressions were used by the Circuit Judge, and have reached the conclusion that while it

would have been better to omit them, yet they did not amount to such expressions of opinion on the merits of the defense of insanity, as to indicate that the Circuit Judge .was a participant in the consideration of that question of fact; and, therefore, they do not fall within the rule stated in *Willis* v. *Tel. Co.,* 73 S. C., 383, 53 S. E., 639, and *Latimer* v. *Electric Co.,* 81 S. C., 379, 62 S. E., 438. Expressions like those quoted in the exceptions, as, indeed, almost any expressions, though harmless in themselves, it is true might be made with such emphasis and manner that they would be highly improper and 'prejudical to the rights of one or the other of the parties litigant; and the defendant contends that the emphasis and manner of the Circuit Judge produced that result in this instance If so, this Court can give no relief. The law clothes the judges with the presumption of poise and dignity, and fairness in both mind and manner. The Circuit Judges of this State have by their conduct added force to this presumption; and an emphasis or manner indicative of partiality or unfairness cannot be assumed in this instance.

The exceptions charging error in that the Circuit Judge asked questions of the witness is without foundation. The questions were not improper in themselves, and it is well within the province of the trial Judge to elicit from witnesses any evidence tending to show the truth of the matter.

The defendant further complains that the Circuit Judge refused to charge: "That habitual intoxication often results in what is called *delirium tremens,* which the law considers a form of insanity, and this will often excuse the party from criminal responsibility; if a person suffering with *delirium tremens* is so far insane as not to know the nature of his act, he is no more punishable than he would be if he had contracted an habitual and fixed insanity from the use of intoxicating liquors or any other cause." The charge actually made was more comprehensive

than these requests, in that it covered not only insanity as an incident of *delirium tremens,* but also insanity of any other form resulting from the excessive use of liquor. This might be shown by several extracts from the charge, but the following will suffice: "Is the defendant, or was the defendant at the time, in such a diseased state of mind that he did not have the faculty of determining right from wrong? Not was he intoxicated at the time, but was the effect on his mind, after having indulged, and indulged to such an extent as to weaken and impair his mind to such an extent that he did not have enough brain matter left to distinguish the difference between right and wrong? If he did it under those circumstances, he is not guilty, and in determining that, you judge of his acts before and after."

As to the request for the instruction that it would be proper for the jury on the issue of insanity "to consider the general conduct, condition, appearance and language of the defendant," it need only be said that the Circuit Judge is not required to single out and emphasize any of the evidence bearing on the issues. *State* v. *Thrailkill,* 71 S. C., 136, 50 S. E., 551.

The exception alleging the failure of the Circuit Judge to charge properly on the subject of reasonable doubt was taken under a misapprehension, for the following instruction was given at defendant's request: "I charge you that while it is true that the defendant is required to prove that he was of unsound mind at the time of the homicide by the preponderance of the evidence, it is also true that upon the consideration of the testimony of the whole case, the State's position, as well as the defendant's, if any reasonable doubt remained in the minds of the jury, the defendant is entitled to a verdict of not guilty."

The remaining exception to be considered is that imputing error to the Circuit Judge in charging: "If he killed her, because he was drunk or mad, that is not manslaughter.

If he killed her because she came to his house and she cursed him and they had a fight; if that is the motive that provoked it, that is not sufficient legal provocation. It must have been done in sudden heat and passion, and upon a sufficient legal provocation." The homicide was admitted by defendant, and the only possible questions were: (1) Did the defendant kill while insane; or, (2) in sudden heat and passion under such legal provocation as would reduce the crime to manslaughter? The instruction complained of was nothing more than saying to the jury that mere drunkenness or anger would have no effect to reduce the crime to manslaughter; and, further, that the mere fact that the deceased had cursed defendant, and that they had had a fight would not have constituted such legal provocation as would reduce a killing *afterward done* to manslaughter. That this was the proposition of law the Court meant to state is obvious from the illustration which immediately followed: "To illustrate a case of sudden heat and passion, if two parties, without any previous quarrel or animosity meet and get into a discussion, and that waxes warmer and warmer, and they get into a fight, mutual combat, and as a result of the combat, one strikes the other and he dies from the effect of it, and that was the result of that quarrel suddenly precipitated, and he dies, under those circumstances the law says, 'Well, you had no right to kill him, but inasmuch as you did it in a fight, in sudden heat and passion, while the blood was coursing through your veins, inasmuch as you did it under those circumstances, it will not hold you to as strict accountability for that act, as if you had gone there premeditatedly and sought it, and, therefore, it takes a charitable view of the act, and reduces the killing from murder to manslaughter.' "

Nor was the portion of the charge to which the exception refers a charge on the facts within the prohibition of the constitution. The constitutional requirement that the Judge shall not state the facts in charging the jury does

not prohibit such reference to the undisputed evidence as is necessary to enable the jury to apprehend the law applicable to the concrete issues of fact which they are to decide. *Anderson* v. *R. R. Co.,* 81 S. C., 1, 61 S. E., 1096; *Tucker* v. *Buffalo Mills,* 76 S. C., 539, 57 S. E., 656; *State* v. *Way,* 76 S. C., 91, 56 S. E., 653.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.