# 134     POWERS v. RAWLS

## 10860

## POWERS v. RAWLS ET AL.

### (112 S. E. 78)

1. ACTION—AT COMMON LAW MATTERS NECESSARY TO PROPER ADMINISTRATION OF JUSTICE NOT REGULATED BY RULES WERE WITHIN DISCRETION OF JUDGE.—At common law all matters necessary to the proper administration of Justice in a Court, which were not regulated by precise rules, were within the discretion of the Judge.

2. TRIAL—COURT SHOULD AVOID EXPRESSIONS OF OPINIONS CALCULATED TO INFLUENCE JURY IN DECIDING MATERIAL ISSUE.—Under Const. 1895, Art. 5, § 26, the trial Court should avoid expressions of opinions reasonably calculated to influence the jury in deciding material issue of fact.

3. TRIAL—COURT REQUIRED TO DECLARE LAW APPLICABLE UNDER ISSUES.—The trial Court is required to declare the law applicable to the material issues.

4. TRIAL—REFUSAL TO CONSIDER PARTY'S REQUESTS NOT ERROR, IF COURT DECLARES LAW APPLICABLE TO ISSUES.—The mere failure or refusal to consider a party's requests will not of itself constitute error, provided the Court declares a law applicable to the material issues.

5. TRIAL—REFUSAL OF REQUESTED CHARGES NOT COVERED BY GENERAL CHARGE ERROR, THOUGH REQUESTS WERE LENGTHY.—Failure to grant requested charges not covered by the general charge is reversible error, though the requests are too lengthy or complex to afford the Court time for proper consideration, since in such case a recess should be taken for a sufficient period of time to afford the Court opportunity to examine and consider the requests.

6. TRIAL—COURT REQUIRED TO DECLINE TENDERED REQUESTS COVERED BY GENERAL CHARGE WHERE UNDULY NUMEROUS, LENGTHY, AND INVOLVED.—Where unduly numerous, lengthy, and involved requests are tendered, it is the duty of the Court to decline to give requests, where the meritorious points are fairly and adequately covered in his general charge.

7. TRIAL—REMARKS OF COURT IN DECLINING TO CONSIDER REQUESTS TENDERED HELD GROUND FOR REVERSAL.—Action of Court in criticizing requests to charge tendered in compliance with Circuit Court

NOTE: The question as to whether delivery of deed to third person or record by grantor is a delivery to grantee, is discussed in notes in 54 L. R. A. 865, 9 L. R. A. (N. S.) 224, and 38 L. R. A. (N. S.) 941.

Rule 11 (73 S. E. vii) because of their length and number, and in stating that it was impossible for any human being "to have gone over them with any degree of intelligence" in declining to consider requests, *held* ground for reversal.

8.  DEEDS—CONVEYING FEE-SIMPLE TITLE EFFECTIVE ONLY ON DELIVERY.—A deed purporting to convey a fee-simple title takes effect only when delivered to the grantee or some one for him, with the intention on the part of the grantor to part with all interest in and dominion over the land by such delivery; the date of the deed being immaterial. ·

9.  DEEDS—INTENT TO VEST TITLE IN GRANTEE ESSENTIAL TO DELIVERY. —Delivery includes not only an act by which the grantor evinces a purpose to part with the control of the instrument, but a concurring intent thereby to vest the title in the grantee.

10.  TRIAL—REFUSAL TO INSTRUCT AS TO DEED TAKING EFFECT ONLY ON DELIVERY HELD ERROR.—In action involving question of whether fathers deed to sons was good as against subsequent purchaser from father, in which it was claimed that the deed did not become effective by delivery prior to the execution and delivery of deed to subsequent purchaser, refusal to charge that a deed takes effect only when delivered with the purpose of vesting title in grantee *held* error.

11.  TRIAL—REFUSAL TO CHARGE THAT NOTICE OF UNDELIVERED DEED COULD NOT AFFECT RIGHTS OF SUBSEQUENT PURCHASER FOR VALUE HELD ERROR.—In action involving validity of father's deed to sons not recorded until after father's death as against subsequent purchaser for value from father, refusal to charge if there had been no valid delivery of the deed to the sons notice of such deed could not affect the rights of subsequent purchaser for value *held* error in view of Civ. Code 1912, § 3543.

12.  VENDOR AND PURCHASER—RIGHTS OF BONA FIDE PURCHASER NOT AFFECTED BY NOTICE OF DEED VOID FOR WANT OF DELIVERY.—Notice of father's deed to sons which was void for want of delivery could not affect rights of a subsequent bona fide purchaser in view of Civ. Code 1912, § 3543.

13.  DEEDS—ALL PARTS OF DESCRIPTION CONSIDERED IN IDENTIFYING THE LAND.—The sole purpose of a description of land as contained in a deed is to identify the subject-matter of the land, and all parts of the description should be taken together and no part suffered to control absolutely the others.

14.  TRIAL—REFUSAL TO CHARGE THAT HEIRS ACQUIRED POSSESSION ON DEATH OF ANCESTOR WHETHER ACTUALLY ON LAND HELD NOT ERROR.—In action involving validity of father's deed to sons as

against validity of father's subsequent deed to third party, in which there was no issue of adverse possession, refusal to charge that on death of third party his possession passed instantly to defendants as his heirs at law whether they were actually and physically on the land or not *held* not error, in view of instruction that, when two parties are in constructive possession of land he who had the oldest possession and the best title must prevail, and in view of Code Civ. Proc. 1912, § 132.

15. WITNESSES—TESTIMONY AS TO CONVERSATION BY PLAINTIFF WITH DECEASED ANCESTOR UNDER WHOM DEFENDANTS CLAIMED HELD INCOMPETENT.—In action involving validity of father's deed to sons as against heirs of fathers subsequent purchaser, testimony as to conversation by plaintiff with deceased ancestor under whom defendants claim held incompetent. Code Civ. Proc. 1912, § 438.

16. APPEAL AND ERROR—STATEMENTS OF COURT ON DAY FOLLOWING ERRONEOUS ADMISSION OF EVIDENCE HELD NOT TO CURE ERROR.—Where incompetent testimony was admitted over objections of adverse party, statements of Court on the following day that the testimony must be withdrawn from the jury held not to cure erroneous admission of evidence in absence of instruction directed to jury to disregard the testimony.

17. APPEAL AND ERROR—INCOMPETENT TESTIMONY OF PROBATIVE FORCE ON MATERIAL ISSUE PRESUMED PREJUDICIAL.—There is a legal presumption that incompetent testimony of some probative force upon a material issue of fact is prejudicial.

18. TRIAL—IN ACTION INVOLVING VALIDITY OF DEED AS AGAINST SUBSEQUENT PURCHASER'S HEIRS, EXCLUSION OF IRRELEVANT TESTIMONY HELD NOT ABUSE OF DISCRETION.—In action involving validity of father's deed to sons as against heirs of father's subsequent purchaser, exclusive of testimony as to contents of letter written by one of the heirs to one of the sons in reply to one from the son to the heir regarding the mental condition of the father as irrelevant *held* not abuse of discretion.

19. APPEAL AND ERROR—TESTIMONY CONTRADICTING WITNESS OF ADVERSE PARTY HELD HARMLESS.—In action involving validity of father's deed to sons as against heirs of subsequent purchaser from father in which one of the sons had testified as to conversation with the father and the subsequent purchaser, admission of testimony of witness who was present at the time that he heard no such conversation *held* not prejudicial.

20. WITNESSES—EVIDENCE NOT ADMISSIBLE TO CONTRADICT WITNESS AS TO IMMATERIAL AND COLLATERAL MATTER.—In action involving validity of father's deed to sons as against heirs of subsequent purchaser from father in which there was testimony that defendant's

counsel when shown deed to sons stated that it was "all right," which the counsel himself while testifying denied, letter written by counsel shortly thereafter was not admissible to contradict the witness; the testimony relating to an immaterial and collateral matter.

Before MEMMINGER, J., Georgetown, May, 1921. Reversed and remanded.

Action by Joseph B. Powers against James M. Rawls *et al.* Judgment for plaintiff and defendants appeal.

The charge of the Circuit Judge is as follows:

Mr. Foreman and gentlemen of the jury: It now becomes the duty of the Court to instruct you upon the points of law involved in this case. There have been a great many points raised and discussed, one way or another; and on behalf of the defendants here there have been passed up to the Court, in compliance with the rule, a number of what are known as requests to charge. They are abstract propositions of law, or points of law, that counsel desires the Court to call to your attention; and, if the Court fails to charge any of these points in his general charge, it is held to be an error on the part of the Judge. But the Judge is not required to read those requests to the jury, but has the right to make a general charge covering all of those points which he deems to be essential for the jury to understand in their proper deliberations on the case. Those requests cover 19 pages, closely written type-written paper; and you saw when they were passed up that the Court was paying attention and listening to the testimony, and I will have to put in the record that I consider it to be absolutely impossible for any human being to have taken all of these points, covering 19 pages, and gone over them with any degree of intelligence whatever, so as to be able to lay them before the jury. As counsel well says, there are few people, if any, that are deeply versed in real law. Each one demands particular study; and yet, under our system, they have to

be thrown on the Court in the trial, and upon the jury, who know nothing about the controversy until they hear the pleadings read. Therefore this Court does not feel warranted in taking the time of the jury in attempting to read these things in detail to you; it would take me at least a half hour to do it, and it would convey practically nothing to you whatever. Therefore the Court is simply going to charge you on such points of law as it conceives to be essential for you to have before you.

Now, what are the issues involved in this case? You so often hear so many papers read in Court and so much discussion and such a mass of matters brought into a case that the real issue becomes obscured; but we nearly always find, after we have threshed these things out, the issue becomes simple and can be easily stated in a brief time. What is the real controversy between these parties? The plaintiff here, Joseph B. Powers, comes into Court and claims that he has a deed for this property, that it was duly executed and delivered to him, and that he has never been in actual occupation of the property; that is, that he never excercised anything like going on it and working on it. But he claims that he had this paper title, and that he has paid the taxes on the property. He claims, and it is a principle of the law, that from that paper title would follow under the law a presumption that he was in possession. A man may never have been on the land he buys, but if he buys it, and has a good paper title to it, the law creates a presumption of possession, and any one going in as a trespasser against that presumption becomes responsible in damages, no matter how small it be.

The defendants come in and claim that this particular piece of land in dispute here is not included in his land, and, furthermore, that their ancestor, George E. Scott, was in possession of this land under a deed, without any notice of any prior deed having been made to the plaintiff; and there-

fore his possession was a lawful one, and that they are not liable to be mulcted in damages for going on the premises; but are entitled to do so, and are the owners of the property.

"Now, the question that arises at the threshold for your determniation is: Is this four-acre piece—has it been proved by the plaintiff, by the greater weight of the evidence, to be within the limits of the deed which he has produced here? Unless he satisfies you by the greater weight of the testimony that those four acres are included in his deed, then, of course, his case fails altogethter. Now, if he has proved that to you by the greater weight of the testimony, the next thing incumbent on him to prove, to get the presumption, of possession, which I have told you the law gives to the paper title, he must satisfy you by the greater weight of the testimony that he has a paper title within the rules of the law upon which he bases his right to this property. In order to prove that under the law, he must show that he has a paper title and that it was duly executed and that it was delivered. Now, you have heard all the testimony upon that point. As you know, a deed would not become effective until delivery, and delivery before the death of his father who, he claims, made the deed to him.

Now, that is another question you will have to determine, if you pass the first one. Has he satisfied you by the greater weight of the testimony that there was a delivery of that deed to him, and that it was duly executed? And it having apparent marks of mutilation on it, he must satisfy you by the greater weight of the testimony that those erasures were made before the delivery of the deed; or give you such explanation of those erasures as will satisfy you that he himself was not a party to the making of the erasures which would in any important particular destroy the effect of the deed. That is the burden the law places upon him primarily who is seeking to establish his right to the possession of the land.

Now, gentlemen, there is a question of the delivery of the deed. Unless he satisfies you by the greater weight of this testimony that this deed was delivered, and was delivered to him before the death of his father—because, to make a deed and put it aside to be delivered after death, the deed never becomes effective—he must show you that the deed was delivered to him before the death of his father. After a deed is delivered to a man it becomes effective; and he has the right to put it aside to be kept by some one else if he wishes to do so. A deed becomes effective upon its delivery; and then a party might conceal it if he sees fit, so far as the custody of it is concerned, but it does not become effective until it is delivered. Now, if he has failed to make out all of those points, of course, his case would fall to the ground.

Now, what is the case sought to be made on the part of the defendant, the ancestor of these parties defending? It is that their ancestor had a point blank deed, that you have seen in evidence, for this very four-acre tract of land; and that that deed was duly executed and delivered to him and carried an absolute title to him; and that he was in possession under that deed, and continued in possession under that deed and that these defendants were in possession up to the time of the beginning of the action and were not trespassers on the premises. Now suppose you find he has such a deed, and there is no dispute about the fact that he has a deed, that Mr. Scott got a deed for those four acres; but what, on the other hand, does the plaintiff claim? The plaintiff claims that Mr. Scott got that deed with full notice and knowledge that that very property had been deeded off to the boys, to this particular plaintiff, one of the sons of John J. Powers. The plaintiff claims that he took that deed knowing that the father of this young man had already deeded off that property, and that therefore his father would have no right to deed it to anybody else. Now the

object of recording an instrument is to give notice. If the facts were in this case that the deed to the son was on record before the deed was made to the ancestor of the defendant, then that would be notice under our laws that the record of the deed gives notice. That is what it is intended for, constructive notice, whether he has seen the record or not; the law gives that notice that a prior deed exists. But it is equally well established that, if a deed be not recorded, yet, if you have actual notice, if the jury decides that he knew when he took this deed—that the ancestor of these defendants knew when he took that deed that a prior deed had been executed to this plaintiff, covering that very land, why then his deed is not as good as against that prior deed because the father, having once conveyed it, could not take it back and convey it to some one else; if the father had conveyed it and delivered the deed to another person. That is a question that the jury will have to decide, if they arrive at that point in the consideration of the case.

It appears to the Court that those are all the points involved in the case. First take up the question whether this land is in the deed of the plaintiff. Is this four acres included in his deed? If not, his case falls to the ground. And if it is included in the deed, was the deed to him executed and delivered? If not the case goes out. If it was, take up the matter of the alteration in the deed. If the alterations were made subsequent to the execution of the deed, and no satisfactory explanation has been given to you on behalf of the plaintiff, as he is required to do as to any mutilation, if not satisfactory explanation as to that has been made, exonerating him from any blame in respect thereto, he can not base his title on that deed. If the change was made before execution, then it is all right; if made after execution, it may be all right, if he gives you a satisfactory explanation of how the alteration was made or that he is not mixed up in it in any shape or form; and he may therefore

use it as a basis upon which to predicate his claim on the property, showing a paper title to this property, from which a presumption of possession would lie.

On the other hand, has it been shown that the ancestor of the defendants took the deed that he has here without notice of this former deed? If you decide in favor of the plaintiff, and that the defendants or any of them, their agents or servants or otherwise, went on these premises and committed trespass, there would naturally be some damages resulting from it, no matter how small it might be. If it be more than a mere nominal sum following the trespass committed on another man's land, then you go by the evidence and estimate the actual damages. It is claimed that brick were taken, and the use and occupation of the land which the plaintiff was kept out of—you group all these matters together, and fix what are called actual damages, the damages he has actually sustained by reason of the trespass. If you go a point further and say that the defendants not only trespassed on the land on which they had no right to go, but that they did it in a willful, wanton, reckless and high-handed manner, totally disregardful of this man's right and claim, then you could give something like punitive damages, to punish these parties and make an example to others from doing such other acts in the future. You write that in a separate form. Your verdict would be, we find for the plaintiff so much money actual damages, or we find so much money actual damages and so much money punitive damages; or we find for the defendant. Remember the principle upon which you are to decide this case, you being the judges of the facts. The Court knows none of these people, never saw them before. I think it is a good idea that Judges should go around from one county to another, covering the whole State. Jurors are supposed to know the people, to hear the testimony, weigh it and decide the case.

Mr. Hazard: If your Honor please, I will ask your Honor's permission to call your attention to the fact that this complaint does not demand possession of the land. It is not an action to recover possession, but an action to recover damages for trespass; and the complaint does not ask for possession, for any use or occupation, but simply for damages for the particular trespasses alleged. I would ask your Honor to charge the jury this request. I will read the request in the language in which I presented it to your Honor. On page 9 of the requests submitted by the defendants, I will ask your Honor to charge these, the seventeenth and eighteenth requests.

The Court: I have explained why I would not charge all of those requests. I cannot undertake to submit them to the jury, or attempt to analyze them in any shape or form; and for you to read them all is the same as for me to read them. So I will consider them all refused.

Counsel is correct that there is no claim for the use and occupation of the premises. Don't take that into consideration, if you come to estimate any damages; and damages are only asked for the actual trespass alleged. Write on the back of this paper here, either we find for the plaintiff so much money actual damages, or we find for the plaintiff so much money actual damages and so much money punitive damages. If you find any amount, write it in words and not in figures. Or we find for the defendant.

*Mr. Walter Hazard,* for appellants, cites: *Testimony not admissible under* Sec. 438, Code Proc. 1912; 53 S. C. 18; 52 S. C. 371; 57 S. C. 467; 56 S. C. 385; Jones Evid. Sec. 794; 11 S. C. 122; 18 S. C. 329; 47 S. C. 488; 57 S. C. 460; 94 S. C. 349. *Judge did not properly withdraw objectionable testimony:* 117 S. C. 44. *Possession of ancestor descends to heirs:* 26 S. C. 219. *Grantee bound by boundaries in deed:* 59 S. C. 115. *Delivery of deed:* 1 Strob. 347; 4 Strob. 1; Dud. Eq. 14; 8 R. C. L. 988, 995; 28 S. C. 278;

60 S. C. 135; 83 S. C. 329. *Effect of unrecorded deed as notice*: 99 S. C. 264; 27 R. C. L. 672. *Refusal of Judge to read requests to charge or consider them was error*: 87 S. C. 408; 98 S. C. 180; 99 S. C. 225; 14 R. C. L. 793; 38 Cyc. 1626; 14 R. C. L. 800, 805.

*Mr. Capers G. Barr,* for respondent, cites: *Long and numerous requests to charge improper*: 38 Cyc. 1689; 127 Ill. 637; 56 No. 517; 43 Mo. App. 450; 43 Mo. App. 424; 99 Ill. App. 495; 40 Mo. App. 642; 35 Mo. App. 15; 42 S. C. 58; 60 S. E. 59; 24 S. E. 580; 33 S. E. 245; 61 Atl. 314. *Where requested charge is covered in general charge it is unnecessary to repeat*: 106 S. C. 37; 103 S. C. 343. *Notice of unrecorded deed*: 34 S. C. L. 479; 15 S. C. 262. *Alterations in deed*: 2 Cyc. 237; 46 S. C. L. 387. *Request properly refused, the reason assigned is immaterial*: 38 Cyc. 1773; 29 Nev. 911; 43 Am. Dec. 321. *Admission of testimony must be prejudicial to warrant reversal*: 91 S. C. 523; 92 S. C. 33; 91 S. C.507; 97 S. C. 278. *Diagrams*: 92 S. C. 33. *Delivery of deed*: 8 R. C. L. par. 5051; 13 Cyc. 561-E; 23 S. C. 89; 95 S. C. 328. *Verdict was a just one*: 93 S. C. 420.

April 11, 1922.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE MARION.

Action for damages for trespass on land and for injunction against further trespass. From judgment on verdict for plaintiff the defendants appeal upon the numerous grounds assigned in the 36 exceptions set out in the record. Of these, 20 were abandoned or withdrawn in argument, leaving the 16, numbered 9, 10, 11, 12, 13, 15, 16, 17, 21, 26, 27, 31, 32, 33, 34, and 35 to be disposed of by this Court. The charge of the Circuit Judge should be incorporated in the report of the case.

The plaintiff, Joseph B. Powers, alleged that he was the owner and in possession of the four acres of land described in the complaint by virtue of a deed from his father, John J. Powers, dated August 15, 1905, conveying to him and his brother, Oliver B. Powers, a tract containing 100 acres, and that by partition made between them the parcel including the said four acres was allotted to plaintiff; that prior to his death the said John J. Powers had conveyed to one George E. Scott the said tract of four acres, but that, at the time of the execution and delivery of the deed from John J. Powers to George E. Scott, the said Scott was fully informed of the prior deed of John J. Powers to plaintiff and his brother and went into possession with full notice thereof; that defendants were the only heirs at law of George E. Scott, deceased; and that they had committed trespasses upon the land to plaintiff's damage, etc. Defendants denied title in the plaintiff, claimed absolute title and exclusive possession under the deed of their ancestor, George E. Scott, and alleged that said George E. Scott was a purchaser for value without notice of plaintiff's alleged title.

The general issue thus joined and tried in the Court below was the issue of title. There was evidence establishing or tending to establish that the deed under which plaintiff claimed had been executed on August 16, 1905, in the absence of the grantee, and that it was recorded on June 1, 1916; that in the meantime it had been kept in the home of the alleged grantor, Rev. John J. Powers, in the immediate custody of his wife, the mother of the grantees; and that during said period the said John J. Powers had exercised control and dominion over the land; that on June 26, 1915, for the consideration of $300 John J. Powers conveyed to defendants' ancestor, George E. Scott, by warranty deed the fee in the four-acre parcel in controversy; that after purchasing Scott cleared a part of the

land and erected a dwelling house thereon, valued at from
$1,500 to $2,500; that Scott lived on the land and paid
taxes thereon until his death on October 3, 1918; that John
J. Powers died in 1917.

Under the general issue of title, the particular issues up-
on which defendants' contentions largely turned were: (1)
Did the deed from John J. Powers to plaintiff and his
brother, Oliver B. Powers, become consummate and effec-
tive by delivery prior to June 26, 1915, the date of execu-
tion and delivery of the deed of John J. Powers to George
E. Scott? (2) If so, did George E. Scott at the time of
the purchase of the four acres have such notice of the prior
unrecorded deed to plaintiff as would deprive him of the
position and rights of a purchaser for value without notice?

At the threshold of the inquiry into the merits of ap-
pellants' grounds of appeal, we are met with an assign-
ment of prejudicial error (exceptions 21 and 26) which
challenges the correctness and propriety of the trial Judge's
method and manner of disposing of defendant's request
to charge as a whole. The trial Judge read and charged
without modification all of the 16 requests submitted by
the plaintiff. The requests of defendants were submitted
in apt time, and no suggestion is made that they did not
comply in form with Rule XI of the Circuit Court (73 S.
E. vii). The Circuit Judge disposed of the requests by
charging the jury as follows:

"Those requests cover 19 pages, closely written typewrit-
ten paper; and you saw when they were passed up that the
Court was paying attention and listening to the testimony;
and I will have to put it in the record that I consider it to
be absolutely impossible for any human being to have taken
all of these points, covering 19 pages, and gone over them
with any degree of intelligence whatever, so as to be able to
lay them before the jury. As counsel well says, there are few
people, if any, that are deeply versed in real estate law.

Each one demands particular study, and yet, under our system, they have to be thrown on the Court in the trial and upon the jury, who know nothing about the controversy until they hear the pleadings read. Therefore this Court does not feel warranted in taking the time of the jury in attempting to read these things in detail to you. It would take me at least half an hour to do it, and it would convey practically nothing to you whatever. Therefore the Court is simply going to charge you on such points of law as it conceives to be essential for you to have before you."

Near the end of the Judge's charge defendants' counsel especially directed the Court's attention to his requests numbered 17 and 18, asking permission to read them, and again requested that they be charged, in response to which the Court said:

"I have explained why I would not charge all those requests. I cannot undertake to submit them to the jury, or attempt to analyze them in any shape or form; and for you to read them all is the same as for me to read them. So I will consider them all refused."

The procedure of the trial Court complained of embraces the two elements of (1) the refusal to examine and consider defendants' requests to charge at all on account of the number and length thereof, and (2) the remarks of the Circuit Judge with respect to such refusal in his charge to the jury. While essential to clearness of treatment that the two elements involved should not be confused, it is to be borne in mind that the assignment of error is directed to the alleged prejudicial effect as a matter of trial practice of the Court's course of action as a whole. For an appellate Court, charged with the correction of errors of law, to determine whether alleged sins of omission or commission of the Judge in the conduct of a trial amount to error of law, is usually a difficult and never an agreeable duty. That task is measurably lightened in the present

instance by the candor displayed by the able Judge who tried the case on circuit in summarily disposing of what he considered unduly lengthy requests to charge and by his scrupulous care to provide that the record should fairly and squarely present the question of his conduct for review.

Since the precise question thus raised has not heretofore been passed upon by this Court, the general principles applicable to its determination will first be adverted to briefly. A trial according to the course of the common law was a trial before a jury under right rulings made by the trial Judge in the presence of the jury. 38 Cyc. 1296. And at common law all matters necessary to the proper administration of justice in a Court, which were not regulated by precise rules, were within the discretion of the Judge. 38 Cyc. 1296; *Goldsmith v. Solomons,* 2 Strob. 296. Upon that common-law concept of the trial has been ingrafted the theory of jury trial now embodied in Section 26, Art. 5, of the Constitution of 1895. For an illuminating discussion of the constitutional limitations imposed upon the discretion of Judges by the provisions of Section 26, Art. 4, of the Constitution of 1868, and of Section 26, Art. 5, of the Constitution of 1895, reference may be had to what may now be justly appraised as a judicial classic, the opinion of this Court delivered by Hon. W. C. Benet, acting Associate Justice, in the case of *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797. It is sufficient for our purposes to observe that, not only must the formal charge to the jury be kept free from any statement of facts in issue or expression as to the weight and sufficiency of evidence (*Norris v. Clinkscales,* supra; *Burnett v. Crawford,* 50 S. C. 161, 27 S. E. 645, and cases following), but it has been frequently held that a trial Judge should not by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts in relation to interlocutory motions, indicate opinions or express views

reasonably calculated to influence the jury in deciding a material issue of fact. *Willis v. Telegraph Co.,* 73 S. C. 379, 53 S. E. 639; *Latimer v. Electric Co.,* 81 S. C. 379 62 S. E. 438; *State v. Driggers,* 84 S. C. 526, 66 S. E. 1042, 137 Am. St. Rep. 855, 19 Ann. Cas. 1166; *State v. Jackson,* 87 S. C. 410, 69 S. E. 883; *Stokes v. Murray,* 99 S. C. 221, 83 S. E. 33; *Enlee v. Ry. Co.,* 110 S. C. 137, 96 S. E. 490. But conjoined with the duty to refrain from trespassing upon the domain of the facts is the mandatory and nondelegable duty imposed upon the Judge of declaring the law. *Collins-Plass Thayer Co. v. Hewlett,* 109 S. C. 245, 95 S. E. 510; *Osteen v. Ry. Co.,* 101 S. C. 542, 96 S. E. 30, L. R. A. 1916A, 565, Ann. Cas. 1917C, 505. "The law is the right of a party arising out of a state of facts." *Collins-Plass Thayer Co. v. Hewlett,* supra. If the Judge may not become a participant in the verdict of the jury by indicating an opinion at any stage of the trial on an issuable fact, clearly he may not participate in the verdict by so declaring the law as to ignore or minimize legitimate contentions of fact of one party to the advantage of the other. 14 R. C. L. 780, 781, 793; *Sawyer v. Hanibal, etc., R. Co.,* 37 Mo. 240, 90 Am. Dec. 382; *State v. Driggers,* 84 S. C. 531, 66 S. E. 1042, 137 Am. St. Rep. 855, 19 Ann. Cas. 1166. To do so may be to express an opinion indirectly upon the weight and sufficiency of evidence far more influential in molding the jury's verdict than isolated expressions of opinion upon detached portions of the evidence. 14 R. C. L. 794. Out of the almost insuperable difficulty of so charging the law as to comprehend all the possible points of view which a party may be entitled to have presented arise the duty and right of counsel to aid the Court in the function of instructing the jury by submitting appropriate requests to charge. 14 R. C. L. 795. Since in performing that duty counsel's position is the position of his client from the standpoint of the facts

in issue, the action of the trial Judge in disposing of such requests should not be reasonably calculated to impress the jury as an appraisal by the Judge of the merits of the party's case. See generally *Tucker v. Railway Co.*, 51 S. C. 312, 28 S. E. 943; *Long v. Ry. Co.*, 50 S. C. 49, 27 S. E. 531. In the light of the foregoing general principles, was there prejudicial error in the procedure of the trial Court?

4-6    As to the first element in the procedure complained of, viz., the refusal to examine and consider defendants' requests on account of the number and length thereof, we do not think the mere failure or refusal to consider a party's requests will of itself constitute error of law. The ultimate responsibility for declaring the law rests wholly upon the trial Judge, and the consideration which should be accorded a party's requests to charge must rest in the sound discretion of the Judge. But it is a judicial discretion which must be "guided by fixed legal principles," some of which have just been pointed out. Further, it is apparent that if the prayers ignored or rejected contain sound propositions of law which, under the issues joined, the party tendering is entitled to have presented to the jury, and which are not adequately met and fairly covered by the general charge, the omission or refusal to consider and charge such requests will constitute reversible error. And the commission of error in that regard cannot be justified or excused upon the ground that the requests are too lengthy or complex to afford the Court time for proper consideration. 38 Cyc. 1690. The practice of counsel in tendering unduly numerous, lengthy, and involved requests is not to be commended. It is not only proper for the trial Judge to decline to give such requests in the form or language submitted, but it is his duty to do so in the interest of clearness if the meritorious points of the requests are fairly and adequately covered in his general charge. See

*Hair v. Winnsboro Bank,* 103 S. C. 343, 88 S. E. 26. But the omission or refusal of the trial Judge to examine and consider a party's requests properly tendered is not to be approved. As was said in *McCaleb v. Smith,* 22 Iowa, 242:

"The practice of refusing to give instructions, or even to read them because they were 'unnecessarily lengthy and numerous,' would be a most dangerous one, and ought not to receive the sanction of an appellate tribunal."

If the trial Judge is a responsible minister of justice, so likewise is the attorney at law. He is an officer of the Court charged with the duty of using all legitimate means skillfully and fairly to present his client's cause. Just as "the law clothes the Judges with the presumption of poise and dignity, and fairness in both mind and manner" (*State v. Driggers,* 84 S. C. 531, 66 S. E. 1042, 137 Am. St. Rep. 855, 19 Ann. Cas. 1166), so likewise it clothes the attorney with the presumption of good faith and of fair and candid dealing with Court and jury. It should always be assumed, therefore, that the painstaking labor of counsel in the preparation of elaborate requests to charge has been actuated by a sincere desire to aid and not to embarrass the Court in declaring the law. The duty of counsel in that regard is to be considered and interpreted in the light of the numerous decisions of this Court to the effect that failure to request the Court to charge a particular proposition of law, or to charge the law more fully upon a given point, or to present the law as to a particular contention or theory fairly founded upon the evidence, will be deemed a waiver of the right to such instruction. *State v. Adams,* 68 S. C 428, 47 S. E. 676; *Morrison v. Benevolent Ass'n,* 78 S. C. at page 401, 59 S. E. 27, etc. If therefore error is committed in failing to give a sound and appropriate instruction prayed for, it cannot be justified or absolved upon the ground that the requests were unduly lengthy or complex.

If necessary for that purpose, a recess should be taken, or
the jury excused for a sufficient period of time to afford the
Court opportunity to examine and consider the requests
properly tendered.

Proceeding to the consideration of the refusal to ex-
amine and consider defendants' requests in connec-
tion with the comment thereon to the jury in the
general charge and with the giving of plaintiff's requested
instructions in full, we are constrained to hold that there
was prejudicial error.   If requests to charge are ignored
or refused, the method and manner of so doing should not
afford reasonable ground for the jury to infer that the
Judge's sympathies or judgment upon the merits is against
the party tendering the requests.   38 Cyc. 1720, 1771.
With the Judge's reasons for refusing requests the jury is
not concerned.   *Tucker v. Ry. Co.*, supra.   When, there-
fore, the refusal to consider the requests was made the oc-
casion of remarks in the general charge to the jury, which
might reasonably be considered adversely critical of coun-
sel's efforts and disparging of his legal position, there can
be no doubt that the trial Judge transcended the shadowy,
but very real, bounds of his discretion.   The cause on trial,
involving the issue of title to real estate, was one peculiarly
dependent for its proper determination upon the application
of more or less technical rules of law.   In such a case the
jury is likely to be peculiarly sensitive to the attitude of the
Judge as the supreme arbiter of the law.   The giving with-
out modification of plaintiff's 16 requests, and the summary
disposition of the defendants' lengthy and elaborate re-
quests to charge by the explanation to the jury in substance
that it was impossible for any human being "to have gone
over them with any degree of intelligence," that the Court
did "not feel warranted in taking the time of the jury in
attempting to read these things in detail," that it would
take "at least half an hour to do it," and that "it would

convey practically nothing to you whatever," we think was reasonably calculated to convey to a watchful and solicitous jury the impression that in so far as the defendants' camp was concerned in the eyes of the law nothing good could come out of Nazareth. For the reasons indicated, exceptions 21 and 26 are sustained.

Defendants requested the Court to charge (thirteenth 8-10 request, ninth exception) as follows:

"A deed is consummate, that is, becomes legally operative and effective, only by actual delivery of the same to the grantee or to some one for him with the intention on the part of the grantor then and there by such delivery to part with all interest in or dominion over the land. The date of the deed is immaterial. It takes effect only when delivered with the purpose of vesting title in the grantee."

As applied to a deed purporting to convey a fee-simple title, the only kind of deed introduced in evidence, the request stated a sound proposition of law. Its refusal will be considered in connection with defendants' fifteenth request (tenth exception), as follows:

"If the deed from John J. Powers to his three sons was placed by him in the custody of his wife, Martha Jane Powers, without intending to part with the control and dominion over it until his death, and with instructions to her to keep it until his death and then deliver it, such delivery, if it took place after the death of John J. Powers, was a nullity and did not vest any title in the grantees named in the deed."

The law stated upon that hypothesis of fact was correct. *Merck v. Merck,* 83 S. C. at page 341, 65 S. E. 347, 137 Am. St. Rep. 815. The two requests under consideration were directed especially to the element of intention in the delivery of a deed. Intention has been called the essence of delivery. 8 R. C. L. p. 978. Delivery of a deed includes, not only an act by which the grantor evinces a purpose to

part with the control of the instrument, but a concurring intent thereby to vest the title in the grantee. 8 R. C. L. 769; *Corrigan v. Byrd,* 23 S. C. 89; *Johnson v. Johnson,* 44 S. C. 373, 22 S. E. 419; *Harrison v. Dunlap,* 96 S. C. 392, 80 S. E. 619. The charge of the trial Judge, otherwise explicit and clear upon the points covered by the requests, failed to instruct the jury as to this essential element of intention in the valid delivery of a deed.   There was circumstantial evidence upon which defendants could reasonably predicate the contention of fact that the alleged delivery of the deed of John J. Powers under which plaintiff claimed had lacked the intent essential to valid delivery.   The issue was a vital one to defendants.   The refusal of the instructions requested was error.

Closely related to the foregoing proposition of law · 11, 12 was the contention of defendants that, since there had been no valid delivery of the deed of John J. Powers under which plaintiff claimed notice of such deed could not affect the rights of defendants' ancestor, George E. Scott, as a subsequent purchaser for value.   Appellants' eleventh, twelfth, and thirteenth exceptions impute error in failing to charge defendants' requests 15a, 17, and 18, all of which are directed to the presentation of said contention.   For the reason that the proposition of law with which appellants are here concerned was fully and correctly set out in the request numbered 17, consideration of this phase of the case will be confined to the twelfth exception, which assigns the refusal of that request as error.   The Circuit Judge was requested to charge:

"If the deed from John J. Powers to his sons had not been actually delivered to them before Scott purchased the land, paid for it, and received his deed, then no notice of the deed could affect his rights, because the deed was a nullity and had no legal effect or operation until it was actually delivered to the grantees in the manner and with the intention which I have already described to you."

It is to be borne in mind that the deed of John J. Powers referred to was an unrecorded deed at the time of Scott's purchase.   Section 3543 of the Civil Code of 1912 provided that—

"Actual notice shall be deemed and held sufficient to supply the place of registration only when such notice is of the instrument itself or its nature and purport."

The Circuit Judge at plaintiff's request charged the jury in the language of the statute and expressly instructed that "if George E. Scott had actual notice of the deed" under which plaintiff claimed or "actual notice of the nature and purport" of said deed, the fact that the deed was unrecorded would be immaterial.   Much of the testimony was upon the issue of notice.   The importance to defendants of having the proposition of law embodied in this request clearly presented to the jury would seem to be obvious.   Giving due effect to the reference in the request to the manner of actual delivery "already described," which covered the possibility of a delivery to a third party for the grantees (thirteenth request above considered), the request was sound and should have been given.   Notice of an instrument, or of its nature and purport, which is inoperative and void for want of valid delivery, cannot affect the rights of a subsequent bona fide purchaser.   Even "equity cannot breathe life into a legal nonentity."   39 Cyc. 1772, and cases cited. See *Merck v. Merck*, 83 S. C. 329, 65 S. E. 347, 137 Am. St. Rep. 815; *Foster v. Bailey*, 82 S. C. 378, 64 S. E. 423; *Blackwell v. Harrelson*, 99 S. C. 264, 84 S. E. 233, Ann. Cas. 1916E, 1263.

The deed under which plaintiff claimed described the land therein to be conveyed as:

"100 acres, to be equally divided, bounded as follows: On the north side by the land of Norman Goude, on the east by land of S. J. Goude, and R. L. Cribb, on the

south side by land of Daniel Grier and R. L. Cribb and W.
C. Powers and on the west side by the land of E. D. Powers."

There was evidence tending to show that the land claimed
by the grantee under said description was not bounded on
the west by the land of E. D. Powers and that the 4-acre
parcel involved in this cause, and claimed by plaintiff as a
part of said 100 acres bounded "on the west by lands of
E. D. Powers," is not located and cannot be found on the
east side or to the eastward of the line of E. D. Powers'
land.   Defendants requested the Circuit Judge to charge as
follows (twenty-fifth request, sixteenth exception) :

"Under this deed the plaintiff must locate the land which
he claims on the east side of the land of E. D. Powers.   If
you find from the evidence that the four-acre parcel of land
which is in question in this case is not located and cannot be
found on the east side or to the eastward of the line of E.
D. Powers' land, then I charge you that the plaintiff has
failed to show that it is included within the boundaries
given by his deed."

The sole purpose of a description of land as contained in
a deed is to identify the subject-matter of the grant.   8 R.
C. L. 1074.   The rule of construction as stated by Mr.
Justice O'Neal in *Foy v. Neal*, 2 Strob. 156, is:

"That all the parts of a description contained in a deed
should be taken together, and no part suffered to control
absolutely the others."

The requested instruction would have violated this rule
in making the western boundary control absolutely the other
parts of the description, viz., the northern, eastern, and
southern boundaries, as well as the element of quantity or
acreage.   The Circuit Judge clearly charged that it was
incumbent upon plaintiff to prove by the greater weight of
the evidence that the four acres in dispute were "within the
limits of the deed" which he produced.   Upon the issue
made and the charge given, the identification and location

of the land covered by plaintiff's deed were properly left to the jury. *Stephens v. Long,* 92 S. C. 71, 75 S. E. 530; *Norwood v. Byrd,* 1 Rich. 135, 42 Am. Dec. 406; *Glover v. Gasque,* 67 S. C. 18, 45 S. E. 113; *Holliday v. Jordan,* 112 S. C. 113, 99 S. E. 465. The exceptions (16 and 17) raising this question are overruled.

Appellant's thirty-fifth and fifteenth exceptions question the correctness of the Circuit Judge's instruction to the effect that, "when two parties are in constructive possession of land, he who had the oldest possession and the best title must prevail," and of his refusal to give defendants' twenty-first request, to the effect that upon the death of George E. Scott, their ancestor, his possession passed instantly into defendants as his heirs at law whether they were actually and physically on the land or not. The controlling issue made by the pleadings and by the evidence was whether the paper title of plaintiff was entitled to prevail against the paper title under which defendants claimed. Since possession is presumed to follow the title (*Wheeler v. Wheeler,* 111 S. C. 87, 96 S. E. 714; *Beaufort, etc., Co. v. New River, etc., Co.,* 86 S. C. 358, 68 S. E. 637, 30 L. R. A. [N. S.], 243; *DuBois v. Peeples,* 93 S. C. 567, 77 S. E. 708) and plaintiff had assumed the burden of proving title, the possession transmitted to defendants as heirs at law of George E. Scott could not affect the determination of the issue. The common-law doctrine that the transmitted possession of the heirs at law is presumed to be rightful having been abrogated by the enactment of what is now Section 132, Code of Civil procedure 1912, and there being no issue of adverse possession involved (*Duren v. Kee,* 26 S. C. 224, 226, 2 S. E. 4), we think the trial Judge's instructions upon this phase of the case were sufficiently clear and definite.

The remaining exceptions relate to the admission and exclusion of evidence and will be disposed of as briefly as is consistent with clearness. The testi-

mony complained of in exception 27 as to conversation between the plaintiff and George E. Scott, the deceased ancestor under whom certain of the defendants claimed as heirs at law, was incompetent under Section 438 of the Code of Civil procedure. But the ground of the objection was not stated. When immediatey thereafter witness was asked to give details of the alleged conversation and objection was made under Section 438, the objection was sustained. Exception 27 must therefore be overruled.

Exception 32 assigns error in admitting the testimony of the plaintiff's witness, O. B. Powers, a cograntee with plaintiff in the deed under which plaintiff claimed, as to conversations and transactions between himself and the deceased, George E. Scott, under whom certain of the defendants claim as heirs at law. The testimony was obnoxious to Section 438. The testimony having been admitted over defendants' objection, properly grounded, the trial Judge on the day following the giving of the incompetent testimony made the following rulings: The witness O. L. Bruorton being on the stand, the Court, addressing counsel, said:

"One of the witnesses testified yesterday, to which objection was made on the ground that he was to be affected by the result of the verdict. I admitted his testimony, but upon considering that question I am going to exclude that testimony; and when I come to charge the jury I am going to take that testimony from them."

Following which, when the witness, O. B. Powers, was on the stand in reply, the Court said (referring to the testimony given by the witness on the day before):

"I have concluded after thinking about it that the testimony of this witness as to a conversation between him and George E. Scott must be withdrawn from the jury.

There appears to have been no instruction directed to the jury to disregard the testimony, no explanation of the error

in admitting it, and no further reference to or identification of the testimony so withdrawn.   The testimony objected to referred not only to conversations but to transactions as to delivery of keys to buildings upon the land in dispute.   If the admission of the improper testimony was prejudicial, bearing in mind that the remedial rulings were made on the day after it had been given on the stand, it would seem clear that there was an entirely inadequate identification of the testimony and ineffective correction of the error.   The guiding principles in the determination of the question presented are very clearly enunciated and strongly discussed by Mr. Justice Cothran, in the recent case of *Templeton v. C. & W. C. Ry. Co.* (S. C.), 108 S. E. 363.   There is a legal presumption that incompetent testimony of some probative force upon a material issue of fact is prejudicial.

It is urged by appellants that the object and tendency of the testimony here in question were to sustain plaintiff's contention of fact, to which considerable other testimony was directed, that Scott, defendants' ancestor, admitted the invalidity of his own title.   It was a material issue, and while the testimony complained of does not impress one as having any decided probative force considered in connection with other testimony, the nature of the case, and the circumstances under which admitted, we are unable to conclude that its erroneous admission was not so prejudicial as to require a more definite and effective correction than was made by the trial Judge.  Exception 32 is sustained.

Exception 33 assigns error in the exclusion of the testimony of O. L. Bruorton, one of the defendants, as to the contents of a lost letter written by him to the plaintiff's witness, L. J. Powers, in reply to one from the said Powers in regard to the mental condition of the deceased, John J. Powers.   The testimony was objected to

under Section 438 of the Code. As the subject-matter was a communication between the witness and another person then living, it was not incompetent under Section 438. It was not excluded upon that ground, however, but upon the ground of irrelevancy. The discretion of the trial Judge in excluding the testimony upon that ground was properly exercised (*Duoton v. A. C. L. R. Co.,* 104 S. C. 29, 88 S. E. 263), and the exception is overruled. Exception 34 imputes error in excluding the testimony of O. L. Bruorton, directed to the point of contradicting plaintiff's witness, L. J. Powers, as to a statement which he claimed to have made to John J. Powers, deceased, and George E. Scott, deceased, at the time of the preparation of the Scott deed. The conversation or communication referred to was not between the witness and the deceased person or persons, but between the deceased parties and L. J. Powers, who was present and testified thereto. The witness Bruorton, so far as the record discloses, was not such a participant in the transaction between the witness Powers and the deceased persons as would make his testimony objectionable under Section 438. *Hughey v. Eichelberger,* 11 S. C. 49; *Kennemore v. Kennemore,* 26 S. C. 251, 1 S. E. 881; *Sullivan v. Latimer,* 38 S. C. 158, 17 S. E. 701; *Colvin v. Phillips,* 25 S. C. 228; *Moore v. Trimmier,* 32 S. C. 512, 11 S. E. 548; *Sloan v. Hunter,* 56 S. C. 385, 34 S. E. 658, 879, 76 Am. St. Rep. 551; *Merck v. Merck,* 89 S. C. 349, 71 S. E. 969, Ann. Cas. 1913A, 937.

The record discloses, however, that the witness Bruorton was permitted to contradict plaintiff's witness as to the alleged conversation with the deceased, John J. Powers, and George E. Scott, by stating that he heard no such conversation. While the record shows that objection made after the testimony had been given was sustained, the testimony itself does not seem to have been effectually withdrawn from the consideration of the jury. The converse

of the rule applied in disposing of exception 32 must be applied here. For that reason the error in sustaining the objection was not prejudicial, and the exception is overruled.

Exception 31 charged error in excluding a letter written by defendants' attorney to plaintiff's witness, L. J. Powers, in reference to the deed under which plaintiff claimed title. The purpose for which the letter was offered was to impeach the verity of the witness Powers' testimony to the effect that defendants' counsel, when shown the deed in question on a certain occasion, had said it was "all right," by showing that counsel had shortly thereafter written the witness a letter expressing a contrary or inconsistent view. The testimony related to an immaterial and collateral matter. Under the rule that a witness may not be discredited as to an entirely collateral question (*State v. Watson,* 94 S. C. 458, 78 S. E. 324; *Turner v. Blue Ridge Ry. Co.,* 106 S. C. 11, 90 S. E. 185), there was no such right to contradict or impeach the witness upon this point as would control the trial Judge's discretion in that regard. But when defendant's counsel was permitted—properly in the circumstances, we think—to contradict plaintiff's witness by going on the stand and denying categorically the statements attributed to him, there was no error in excluding the letter for the purpose of corroboration. *State v. Thomas,* 3 Strob. 269; *State v. Gilliam,* 66 S. C. 419, 45 S. E. 6; *State v. McDaniel,* 68 S. C. 304, 47 S. E. 384, 102 Am. St. Rep. 661; *State v. McIntosh,* 94 S. C. 442, 78 S. E. 327. The exception is overruled.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. JUSTICE WATTS did not participate on account of sickness.