## 9905

### COLLINS-PLASS THAYER CO. v. HEWLETT.

#### (95 S. E. 510.)

1. CONTRACTS—BREACH—RESCISSION—CONTINUING CONTRACTS.—Where a party to a contract refuses to do what he promised to do, there is a breach which gives the other a cause of action, but a breach at one stage of a continuing contract does not necessarily put an end to the whole contract, so that the other could rescind.

2. CONTRACTS—CONTINUING CONTRACTS—BREACH—RESCISSION—QUESTION FOR JURY.—Whether refusal to ship an order of sacks under a continuing contract, because a former order shipped had not been paid for as provided by the contract, was such a breach as to entitle the purchaser to rescind the whole contract *held,* under the evidence, for the jury.

3. CONTRACTS—INSTRUCTIONS—CONSTRUING CONTRACTS.—Although the duty rests on a Court to construe a written contract, there is no need to do so, where the contract is plain and there is no question as to its meaning.

4. TRIAL—DUTY OF COURT TO DECLARE THE LAW.—In action for breach of a continuing contract, where defendant also claimed a breach, failure of the Court to charge as to the law as to breaches, duties, and measure of damages was error, under Const., art. V, sec. 26, making it the duty of the Court to declare the law, although no charges were requested.

5. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—Although the Court erred in not declaring the law in a case, as required by Const., art. V, sec. 26, it was not reversible error where the jury decided correctly.

Before MEMMINGER, J., Barnwell, Fall term, 1916. Affirmed.

Action by the Collins-Plass Thayer Company against John H. Hewlett. Judgment for plaintiff, and defendant appeals.

The charge referred to in the opinion was as follows:

Mr. Foreman and Gentlemen of the Jury: This controversy is before you for determination. You will have in the jury room what is known as the complaint, which sets out the claims of the plaintiff. You will have also the answer. You will find on the back of that complaint that a verdict has been written before in favor of the plaintiff for a certain amount of money. It appears that the case came up and there was no answer put in on behalf of Mr. Hewlett, and they appeared before the Judge and got a verdict, and, on the matter being called to the attention of the Court, the Court set that verdict aside, and said that the case should be tried before a jury. The answer sets out the contentions of Hewlett, and you will have that before you.

The questions in this case are plain and simple. You will find in this first cause of action in the complaint that they claim that they entered into a certain contract with Mr. Hewlett for the future delivery of certain bags at the price, etc., set out in that contract, and that they shipped to him one shipment under that contract, and for that he paid; that they shipped him a second shipment, under that contract, and that he did not receive or pay for; that he would not take it, and did not pay for it, and they claim that they lost thereby $225.26 for the bags so shipped. They claim that they shipped those bags to him, and he would not pay for those, and that, therefore, he owes them for those $225.26, the price thereof.

Now, in the second cause of action, it is claimed that not only would not Mr. Hewlett pay for those bags, which they claim that they shipped to him, but that he refused to order out any more bags under the contract that they held for the rest of the bags specified and set out in the contract subject to his orders, but that he neglected or declined or refused to order them out, and, while they were holding them subject to his order, that the price of bags declined, and that therefore they lost the difference in the price which they had contracted to sell them to Mr. Hewlett for and the price which they could get for them on the market, and that they would have shipped them to Mr. Hewlett had he ordered them out, and that that amounts to $1,500.

Mr. Hewlett claims, on the other hand, and you will find it set out in the answer, that they made him one shipment under his contract, which he sold to Mr. All, and that he took that shipment out, and, although he found them not to be the dimensions he had agreed upon, still he paid for them, and there is no contest that he paid for that shipment. He says the terms of the contract were, as you will find set out in the contract, that the goods were to be shipped when ordered, with sight draft attached to the bill of lading. Mr. Hewlett claims to the second shipment that they did not comply with that, in that they varied from the terms of the contract, and would not let him get the second shipment until he paid for the first. He claims that they had no right to make any conditions as to the payment of a previous shipment before any subsequent shipment that he afterwards ordered would be shipped. He claims that they broke their contract in that way, and, the goods not having been received by him, that he had to abandon the contract and get out and supply himself on the market with other bags to use in his business, and that, the contract having been broken, they are not entitled to receever anything whatsoever upon it.

You will, therefore, decide either in favor of the plaintiff or for the defendant. If you find that the plaintiff has not made out its case by the greater weight of the evidence, you will find for the defendant. If you find that the plaintiff has made out his case by the greater weight of the evidence, you will find for the plaintiff. Just say: "We find for the plaintiff" so much money, or "We find for the defendant," and sign your name as foreman. That is the whole thing. It is for you to decide. Write the verdict on the back of the paper marked "Summons and Complaint." Write your verdict out in words and not figures, if you find for the plaintiff, or, "We find for the defendant," if you find for the defendant, and sign your name as foreman, Mr. Foreman.

You may retire.

The jury returned a verdict of seven hundred dollars for plaintiff, and defendant appeals from Judge's refusal of motion for nonsuit, from charge to jury and from refusal of motion for nonsuit.

*Mr. Jas. M. Patterson,* for appellant, submits: *The Judges, in charging juries, should declare the law:* Constitution, 1895, article V, sec. 26.

*Messrs. V. Seymour Owens* and *Jas. A. Willis,* for respondent. *Mr. Owens* submits: *If the defendant desired any more specific instructions than were contained in the charge on any view of the law, he should have presented requests covering his views:* 92 S. C. 72; 90 S. C. 323; 95 S. C. 441; 91 S. C. 201. *As to liability of purchaser, who orders goods to be manufactured and then refuses to take them:* 81 S. C. 114; 83 S. C. 113; 94 S. C. 224. *As to province of jury:* 90 S. C. 184-5.

February 11, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action and recovery for breach of contract. The testimony tends to show these circumstances: The plaintiff resides in New York and the defendant resides at Allendale, in this State. They made in the fall of 1913 a contract in writing, whereby the defendant agreed to make orders of the plaintiff for 38,000 bags in which to pack fertilizers at Allendale, and whereby the plaintiff agreed to ship to the defendant the bags as they might be ordered. The preliminary contract to sell and to pay was made through a Charleston broker for the plaintiff. Thereafter the transaction was evidenced by a letter written by the plaintiff to the defendant, which, omitting irrelevant parts, reads thus:

"We have received your order * * * for thirty-eight thousand bags * * * delivered at Allendale, S. C., terms cash sight draft attached to bill of lading * * * fall or spring delivery."

This writing was accepted by the defendant, and evidences the contract. Pursuant thereto the defendant on 2d of February ordered 3,000 bags, which were shipped on February 16th to him from New York. The testimony tends to show that payment for these bags was not made pursuant to the letter of the contract, but that the defendant got possession of the bags February 26th, and was belated in paying the draft drawn against them until some 12 days thereafter, about March 10th, the testimony does not fix the exact day. This delay in payment gave rise to the first occasion of discord between the parties. On February 19th the defendant ordered out 2,000 bags more, and wired the plaintiff on February 27th to know when they might be expected. To that wire the plaintiff answered by wire on March 2d in these words:

"Will make no further shipment until draft is paid. See letter."

—referring to the draft drawn against the 3,000 bags, and above alluded to. The letter, to which the telegram pointed the defendant, was written also March 2d, and it reads thus:

"Confirming our wire, your contract with us called for prompt payment of draft for bags as shipped. This you have refused to do, and we herewith notify you that we will not fill any further orders until that draft is paid. Further your contract standing does not warrant further shipments."

Nevertheless, the plaintiff did ship out to the defendant the 2,000 bags, consigned to the plaintiff's order, with direction to notify the defendant. But the plaintiff had advice of the payment of the first draft before, and shipment was made. And on the same day the 2,000 bags were shipped out (March 10th) the plaintiff wrote to the defendant a letter, the relevant parts of which read thus:

"You made a contract with us for fertilizer bags, 38,000 of them, and have furnished us with orders for 3,000 only. We shipped those out on the 16th of February, as per your directions, made draft to the Citizens Bank of Allendale, and that draft has not yet been paid. We request that you take up that draft, and we herewith notify you that we stand ready to fill the balance of your order and are waiting directions for same, and we request that you forward them."

No reference was made in the letter to the concurrent shipment of the 2,000 bags; and there is no testimony that defendant knew, on March 13th of their shipment out when he wrote the letter of March 13th. To this letter of March 10th the defendant answered on March 13th as follows:

"Yours to hand of March 10th and carefully noted. The three thousand bags you shipped were rejected by our customer as not being full measure, consequently we have to

pay for them.    We sent you an order for two thousand bags which you did not fill, so in the face of such treatment as this, we placed our orders elsewhere and will not need the bags that you have for us."

The 2,000 bags were not accepted by the defendant.    The plaintiff testified thereabout as follows:

"We were notified, or we found out some time later, that the bags shipped on March 10, 1914, were at the depot at their destination.    We were never able to find out what became of them.    They may be down there now for all I know.    These bags were shipped in accordance with the contract, as far as I know.    When the draft was not paid we requested the bank to return us the bill of lading and draft, which they did."

This recitation of the testimony is made necessary by the motion for nonsuit.    The action is to recover the price of 2,000 bags, which was some $225, and the loss alleged to be $1,500, which the plaintiff had sustained on the other 33,000 bags which the defendant never ordered out.    The defendant admitted the contract, denied the breach of it by himself, and alleged a breach of it by the plaintiff.    The verdict was $700 for the plaintiff.

There are five exceptions; but we need only consider the two that are vital.    They are: (1) That a nonsuit ought to have been granted; and (2) that the Court ought to have construed the contract, and ought to have stated to the jury the law of the case.    The Court was right to refuse the motion for nonsuit.    The ground of the motion was: (1) Because the plaintiff had wrongfully demanded payment for the first shipment before the second order should be filled; and (2) because the plaintiff had ordered returned to New York the bill of lading for the second shipment; the inference being that the defendant was unable, for that

reason alone, to secure a delivery to him of the bags. The first ground needs only to be considered, for the second ground depended wholly upon what credence the jury gave to the defendant's testimony thereabout.

Coming to the first ground, the contract was one which required successive and reciprocal steps to be taken by the parties to it. It was to be performed throughout a whole season, "fall or spring." The duty of the defendant was to order the bags; the duty of the plaintiff was to send them forward; the duty of the defendant was to receive the bags and pay cash for them. The contract in its entirety involved the sale of 38,000 bags, along through the season in lots, and the reciprocal duties stated attached to each lot as it should be shipped out. In the instant case the controversy arose over only 2,000 bags; not over 38,000 bags which the defendant has put in jeopardy. The defendant seeks to rescind the entire contract for 38,000 bags because the plaintiff halted on promptly shipping out 2,000 bags, because three other thousand, before delivered to the defendant, had not yet been paid for.

When a party to a contract refuses to do that which he thereby promised to do, that act constitutes a breach of the contract, and gives the other party a cause of action for that breach. But a breach at one stage of a continuing contract, like the instant one, does not necessarily put an end to the whole of the contract; that is, entitle the other party to rescind the entire contract. Bishop states the case this way: "When parties have entered into a contract requiring successive steps to be taken by each, if one declines or is unable to take his step while the other is ready and willing, the latter may proceed against the former for damages by reason of the breach, or in some, not in all, he may, should he prefer, rescind the contract. * * * The breach to justify a rescission must be * * * in a substantial part and going to the root of the matter." Bish. on Contracts, p. 247.

In the event of such a rescission, as the defendant confessedly undertook to do in the instant case, "it becomes a question of fact in each case whether the breach is entire or partial."  6 R. C. L., p. 1023.

The Court in this case would not have been warranted to conclude, on the testimony, that the plaintiff did any act which challenged the contract in its entirety; the act specified did not certainly do so.  The defendant confessedly undertook to breach the entire contract; and it was an issue for the jury, under the proper instructions, to find whether the plaintiff had done any act which justified the defendant's entire breach.

It is true that the duty rests on a Court to construe a written contract.  But where a contract is plain in its language, there is no need to construe it.  The instant contract was of that character.  The appellant has not suggested that he had one view of the instrument and the respondent had another view.  There was never any question about what the contract writing meant.

Upon the last issue that which suggests that it was the duty of the Court to "declare the law," and the Court failed to do so, there is room to pause.  Article V, sec. 26, Const.  Let the charge be reported.  Suppose the Court had only read the pleadings, and then directed the jury: "You will, therefore, decide either in favor of the plaintiff or for the defendant.  If you find that the plaintiff has not made out its case by the greater weigth of the evidence, you will find for the defendant.  If you find that the plaintiff has made out his case by the greater weight of the evidence, you will find for the plaintiff."

Plainly that would not have been a compliance with the direction of the Constitution to declare the law.  The law is the right of a party arising out of a state of facts.  A jury ought to be instructed about what right springs out of a fact to be determined by them.  The jury ought not to be left to cut a way through the woods

with no compass to guide it.    It is true a Court is not bound to charge all the law, on every phase of the case, at the risk of a reversal for a violation of the Constitution.    It has been frequently held that a party who desires a specific charge, one not embraced in the general charge of the Court, ought to request it.    We think the instant charge was hardly a sufficient compliance with the Constitution.    The jury was not instructed in what the breach of a contract consisted, and the difference between a partial breach and an entire breach, and the legal consequences of such breaches, and the duty the plaintiff owed to the defendant in the event of a breach by the defendant, and the measure of damages the plaintiff was entitled to, in the event of recovery.    But a judgment ought not to be reversed unless it is manifestly wrong.    To revert to the metaphor we used, if the jury has found the right way without a compass, then no real wrong has been done.    The jury certainly did not depart too far on the side of the plaintiff.

Contemplation of the testimony, which satisfied the jury, leads us to conclude that the appellant has not been wronged. The jury might have awarded a larger verdict against him than it did; that it did not do so is no ground for complaint by the defendant.

We are, therefore, of the opinion that the judgment must be and is affirmed.

MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur.

MR. CHIEF JUSTICE GARY concurs in the result.