CARLOS A. BUSCAGLIA, Plaintiff and Appellant, *v.* QUINTANA RACING PARK, Defendant and Appellee.

No. 7145. Argued March 10, 1937.—Decided December 16, 1937.

*R. Cuevas Zequeira* and *Rafael Buscaglia* for appellant. *Bolívar Pagán* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Carlos A. Buscaglia, plaintiff in an action for damages arising out of an alleged breach of a contract, appeals from an adverse judgment.

The first assignment is that the district court erred in dismissing the action on the ground that Buscaglia himself had been the first to violate the contract, because this ground is at variance and inconsistent with the defense set up by defendant in his answer.

Plaintiff alleged: that on or about July 15, 1932, defendant entered into a contract with plaintiff whereby plaintiff became defendant's agent and representative for the sale of printed forms known as *cuadros* and *papeletas,* used by the public in betting on the pool connected with the horse races at the Quintana race track, and also for the preparation, stamping and transportation of said *cuadros* and *papeletas;* that the territory assigned to plaintiff as agent included a number of municipalities enumerated in the complaint; that plaintiff furnished a bond for $25,000 which was approved by defendant and reported by it August 24, 1932, to the Insular Racing Commission; that plaintiff, in accordance with the terms of the contract, assumed responsibility for the agencies and became responsible to the Quintana Racing Park for all the acts or omissions of the sub-agents whom he employed in the business of selling, preparing, stamping and transporting *cuadros* and *papeletas* which were to be furnished to the public—*papeletas* at forty cents, *cuadros* at thirty-five cents in the municipality of Ponce and at twenty-five cents in the other municipalities within the district; that the foregoing prices included the "intrinsic value" of the documents as well as the commission to be charged for the transportation thereof from the respective agencies to the Quintana office; that as compensation for the obligations assumed by plaintiff, the Quintana Racing Park agreed to allow him eleven cents for each *papeleta* sold and thirteen cents for each *cuadro,* except those disposed of in Ponce, on which he

was to receive a profit of twenty-three cents; that the contract was for a term of four years, from July 15, 1932, date of defendant's approval of the bond.

Defendant denied that it had entered into any contract with Buscaglia whereby the latter became defendant's agent and representative for the sale of *cuadros* and *papeletas;* denied that the said contract included the municipalities enumerated in the complaint or any other municipalities; explained that Buscaglia had furnished a provisional bond and had promised to agree with defendant upon the terms of a contract of agency to be definitely consummated between the parties and to be secured by a good and sufficient bond which Buscaglia undertook to furnish in final form (*definitivamente*); explained that the bond was executed in provisional form because the next races were about to be run and, according to an act of the legislature just approved, a bond was necessary and the provisional bond, by its terms, did not imply a contract but a promise to enter into a contract within a period of fifteen days; denied that Buscaglia had furnished a bond as defendant's agent and alleged that Buscaglia had furnished a provisional bond in the sum of $25,000, coupled with an undertaking to furnish a bond in final form to be embodied in a notarial instrument and recorded in the registry of property, which bond was never furnished within the period specified in the provisional bond nor thereafter; admitted acceptance of the provisional bond pending execution of the contemplated bond in final form and alleged that it had several times demanded such execution within the time specified; alleged that when the provisional bond was executed it was agreed that the terms of the final contract of agency would be set forth in the contemplated bond when executed and that the parties had never agreed upon the terms to be embodied in the final contract of agency; admitted that Buscaglia was to assume responsibility for the agencies established in the municipalities referred to and was to be responsible for all acts or omissions of the agents,

sub-agents and employees utilized by him in the sale, preparation, stamping and transportation of *papeletas* and *cuadros;* denied the existence of any agreement that the *papeletas* were to be sold at forty cents, or less, *cuadros* at thirty-five cents, or less, in the municipality of Ponce or at twenty-five cents, or less, in the other towns included in the territory. Defendant denied that the said prices included the "intrinsic value" or any other value of the forms used in betting or the amount of the commission to be charged for the transportation of *cuadros* and *papeletas* from the agency or from any part of the island to the Quintana racing track office, and alleged that when the provisional bond was signed, in view of the shortness of time due to impending races, it was agreed that the terms of the agency contract referred to in the said bond would be later agreed upon by the parties on execution of a bond in final form, and that in the meantime the agencies could continue selling the *cuadros* and *papeletas* at the usual prices, but that the final contract and the bond in final form were never executed because of Buscaglia's neglect. Defendant denied that it has agreed to pay Buscaglia eleven cents or any amount for each *papeleta* sold, or thirteen cents or any amount for each *cuadro,* or twenty-three cents or any other amount for the *cuadros* or *papeletas* which he might sell in the municipality of Ponce.

Defendant also alleged as an affirmative defense: that, by virtue of a law enacted in 1932, plaintiff and defendant in July of that year, two or three days before the date on which certain races were to be run at the Quintana race track, in view of the fact that there was no time for the execution of a written contract and of a bond in the form required by defendant, entered into a provisional agreement to the effect that plaintiff, for the time being, would take charge of the Quintana race track agencies in the municipalities mentioned in the complaint for a period of fifteen days and would furnish a provisional bond of $25,000 to remain in force for a period of fifteen days only, until a bond in final form should

be executed; that the parties promised to sign a contract of agency, the terms of which were to be agreed upon at the time of executing the bond in final form, Buscaglia being authorized in the meantime to sell *cuadros* and *papeletas* in the usual manner, provided that the price should never exceed that of the Las Monjas race track; that, notwithstanding the fact that more than two months had elapsed since the provisional bond had been signed and various demands had been made for execution of the contract and bond in the required final form, plaintiff never appeared for the purpose of executing such contract; that notwithstanding this breach of the provisional contract, defendant had always been willing and still was willing to execute the contract in accordance with the terms verbally agreed upon, if plaintiff was willing to execute a satisfactory bond.

Aside from any question of negative pregnant, defendant's first denial—construed in connection with the second and with the explanatory statements, admissions, denials and positive averments which follow—was not necessarily inconsistent with defendant's affirmative defense.

Plaintiff raised no question in the district court as to any such inconsistency and interposed no objection to any of the evidence adduced by defendant at the trial in support of the issues so tendered. The question now sought to be raised for the first time as to any technical variance between such proof and defendant's previous denial of the existence of any contract comes too late for serious consideration.

The second assignment is that the district court erred in deciding that plaintiff failed to perform his contractual obligation because he never converted the provisional bond into a notarial instrument.

The district judge said that the furnishing of a bond "besides having been agreed by the parties" was a statutory requirement. The error, if any, as to the effect of Section 23 of the Racing Act of 1932 (Laws of that year 194, 206) would not be a sufficient ground for reversal. We cannot

agree with appellant that he was prevented by defendant from furnishing a bond in the form of a notarial instrument as contemplated and required by the provisional agreement.

The third assignment is that the district court erred in deciding that the obligation of converting the provisional bond into a public instrument "was an obligation imposed upon plaintiff" and in deciding that because of the non-performance of this requirement defendant was relieved from a continuation of the agency contract. The contention is: that Buscaglia was not a party to the provisional bond executed by his sureties and accepted by defendant; that the failure to convert the provisional bond into a notarial instrument was by mutual consent of the parties and the continuation of the agency for several months after expiration of the fifteen days specified in the provisional bond amounted to a waiver by defendant; that "breach at one stage of a continuing contract does not necessarily put an end to a whole contract"; that the breach of a contract in minor respects affords no basis for rescission; that defendant's only remedy was to demand the execution of the formal instrument by Buscaglia's sureties. The only authorities cited in the brief for appellant are Third Decennial Digest, Vol. 8, paragraph 235; *Collins Plass Thayer Co.* v. *Hewlett,* 95 S. E. 510, and *Dold Packing Co.* v. *Doerman,* 293 Fed. 315.

The district judge found that Buscaglia, by virtue of his oral agreement with defendant, was bound to furnish forthwith a provisional bond which was to be executed in final form by means of a notarial instrument within fifteen days. This finding is not assigned as error. Buscaglia was not relieved of the obligation assumed by him in his oral agreement by the fact that he did not himself sign the provisional bond executed by his sureties. If the district judge in a subsequent reference to the obligation "imposed upon plaintiff" was, as appellant assumes, construing the provisional bond, and if he erred, as now claimed by appellant, the error was harmless.

The fifth assignment is that the district court under-estimated the probative value of a certain letter wherein defendant reminded Buscaglia of an agreement not to increase the prices of *cuadros* and *papeletas* for the races about to be run. It may be conceded that the writer of this letter had in mind the possibility of a raise in prices after the running of the next two races. What the district judge said was that the letter did not imply an authorization for the sale of *cuadros* and *papeletas* at a higher price than that fixed by Las Monjas. In this we find no error. The letter does not militate so strongly against the testimony tending to establish the existence of an agreement not to sell at higher prices than the prices at which Las Monjas was selling as to justify the reversal of the district judge's finding that a preponderance of all the evidence on this point was in defendant's favor.

The fourth assignment is that the district court erred in holding that the evidence as to the amount of damages was insufficient as a basis for any judgment for plaintiff. We need not pass upon this point.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.