CARLOS A. BUSCAGLIA, demandante y apelante, *v.* QUINTANA RACING PARK, demandada y apelada.

Núm. 7145.—*Sometido:* Marzo 10, 1937. *Resuelto:* Diciembre 16, 1937.

*R. Cuevas Zequeira y Rafael Buscaglia,* abogados del apelante; *Bolívar Pagán,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Carlos A. Buscaglia, demandante en pleito de daños y perjuicios provenientes del supuesto incumplimiento de un contrato, apela de una sentencia adversa.

El primer señalamiento es que la corte de distrito cometió error al declarar sin lugar la demanda, fundada en que el mismo Buscaglia había sido el primero en violar el contrato, por cuanto este fundamento es incongruente e irreconciliable con las alegaciones de la demandada en su contestación.

El demandante alegó: que allá para el día 15 de julio de 1932 la demandada celebró un contrato con el demandante, según el cual el demandante se convertía en el agente y representante de la demandada en la venta de formularios impresos conocidos con el nombre de cuadros y papeletas, utilizados por el público para el juego denominado *pool* en relación con las carreras de caballos que se celebran en el Hipódromo Quintana, así como para la preparación, sellado y conducción de tales cuadros y papeletas; que el territorio asignado al demandante como tal agente incluía un número de municipios que se enumeran en la demanda; que el demandante prestó una fianza de $25,000 que fué aprobada por la demandada y notificada por ésta en agosto 24, 1932, a la Comisión Hípica Insular de Puerto Rico; que el demandante, de conformidad con los términos del contrato, asumió las responsabilidades de las agencias y había de responder al Quintana Racing Park, Inc., de todos los actos u omisiones que pudieran realizar los subagentes que utilizara en el negocio de venta, preparación, sellado y conducción de cuadros y papeletas, que habían de expenderse al público, las papeletas a 40 centavos, los cuadros a 35 centavos en el municipio de Ponce y a 25 centavos en los demás pueblos comprendidos en su territorio; que los precios de referencia incluían "el valor intrínseco" de los documentos, así como también la comisión que había de cargarse por la conducción de los mismos desde la agencia respectiva hasta la oficina del *pool* del Hipódromo Quintana; que en compensación de las obligaciones por él asumidas, el Quintana Racing Park, Inc., convino en satisfacer al demandante la suma de 11 centavos por cada papeleta vendida y 13 centavos por cada cuadro, con excepción de los que se expendieran en la ciudad de Ponce, sobre los

cuales el demandante tenía derecho a recibir un beneficio de 23 centavos; que el contrato había de durar cuatro años, a contar del 15 de julio, 1932, fecha en que la demandada aprobó la fianza.

La demandada negó que hubiera celebrado ningún contrato con Buscaglia a virtud del cual éste se convirtiera en agente y representante de la demandada para la venta de cuadros y papeletas; negó que dicho contrato incluyera los municipios enumerados en la demanda o cualesquiera otros; explicó que Bucaglia había suministrado una fianza provisional y había prometido convenir con la demandada en los términos de un contrato de agencia que sería definitivamente consumado por las partes y que sería garantizado por una fianza buena y suficiente que Buscaglia convino en suministrar definitivamente; explicó que la fianza fué prestada de manera provisional porque las próximas carreras iban a celebrarse, y, de acuerdo con una ley de la Asamblea Legislativa que acababa de aprobarse, una fianza era necesaria, y la fianza provisional, por sus términos, no implicaba la celebración de un contrato, sino la promesa de celebrar uno dentro del período de quince días; negó que Buscaglia suministrara una fianza como agente de la demandada y alegó que él había prestado una fianza provisional por la suma de $25,000, comprometiéndose el demandante a prestar definitivamente una fianza mediante escritura pública, que sería inscrita en el Registro de la Propiedad, fianza que nunca fué suministrada dentro del término especificado en la fianza provisional ni más tarde; admitió haber aceptado la fianza provisional mientras se otorgaba la supuesta fianza definitivamente y alegó que en distintas ocasiones había exigido tal otorgamiento dentro del período especificado; alegó que cuando se otorgó la fianza provisional se convino que los términos del contrato final de agencia se harían constar en la fianza definitiva y que las partes nunca convinieron en las condiciones en que habría definitivamente de celebrarse el referido contrato de agencia; aceptó que Buscaglia asumiría las responsabili-

dades de las agencias establecidas en los pueblos menciona-
dos y había de responder de todos los actos u omisiones que
pudieran realizar los agentes, subagentes y empleados que
utilizara el demandante en el negocio de venta, preparación,
sellado y conducción de papeletas y cuadros; negó que se
conviniera que tales papeletas habrían de venderse a 40 cen-
tavos o a una suma menor, que los cuadros habían de ven-
derse a 35 centavos o menos en la ciudad de Ponce o a 25
centavos o menos en los demás pueblos comprendidos en el
territorio. Negó la demandada que los precios de referencia
comprendieran ''el valor intrínseco'' ni ningún otro valor
de los documentos utilizados para jugar al *pool,* ni el importe
de la comisión que había de cargarse por la conducción de
cuadros y papeletas desde las agencias ni de ningún otro sitio
de la isla hasta la oficina del *pool* del Hipódromo Quintana, y
alegó que al firmarse la referida fianza provisional, dado el
corto tiempo que mediaba para la celebración de las próxi-
mas carreras, se convino que los requisitos y condiciones en
que habría de celebrarse el contrato de agencia a que se re-
fiere dicha fianza serían convenidos entre las partes al fir-
marse la fianza efectiva, y que mientras tanto ésta se realizaba
podían las agencias continuar vendiendo los cuadros y pape-
letas a los precios de costumbre, pero que el contrato defini-
tivo jamás llegó a otorgarse ni la fianza definitiva, debido a la
negligencia de Buscaglia. La demandada negó haber conve-
nido pagar a Buscaglia la suma de 11 centavos ni ninguna
otra suma, por cada papeleta vendida, o 13 centavos, ni nin-
guna otra suma, por cada cuadro, o 23 centavos, ni ninguna
otra suma, por los cuadros o papeletas que vendiera en la
ciudad de Ponce.

La demandada también alegó como defensa afirmativa:
que en virtud de una ley aprobada en 1932 (Ley Núm. 11 de
1932, pág. 195), el demandante y la demandada, allá para el
mes de julio de dicho año, dos o tres días antes de celebrar
carreras el Hipódromo Quintana, en consideración al hecho de
que no había tiempo para celebrar un contrato escrito y pres-

tar una fianza en la forma que requería la demandada, convinieron provisionalmente en que el demandante se haría cargo interinamente de las agencias del Hipódromo Quintana en los pueblos que se relacionan en la demanda por el término de quince días y prestaría una fianza provisional por $25,000, la cual sólo estaría vigente por quince días y hasta que se otorgara una definitiva; que las partes prometieron firmar un contrato sobre el negocio de agencia, cuyos términos se convendrían al firmarse la fianza definitiva, pudiendo Buscaglia mientras tanto vender los cuadros y papeletas en la forma acostumbrada, siempre que el precio no fuera mayor que aquél a que los vendiera el Hipódromo Las Monjas; que no obstante el hecho de haber transcurrido más de dos meses de haberse otorgado la fianza provisional y haber sido requerido varias veces el demandante para que viniera a otorgar el contrato y la fianza definitiva en la forma requerida, dicho demandante nunca compareció a formalizar tal contrato; que a pesar del incumplimiento del contrato interino, la demandada ha estado siempre, y lo está aún dispuesta a celebrar el contrato en los términos convenidos verbalmente, siempre que el demandante esté dispuesto a otorgar la correspondiente fianza.

Fuera de cualquier cuestión de una negativa que envuelve una afirmativa (*negative pregnant*), la primera negación de la demandada—interpretada en armonía con la segunda y con las alegaciones explicatorias, con las admisiones, negativas y alegaciones positivas que le siguen—no era necesariamente inconsistente con la defensa afirmativa de la demandada.

El demandante no suscitó cuestión alguna en la Corte de Distrito en torno a tal inconsistencia ni levantó objeción alguna sobre la prueba aducida por la demandada durante el juicio en apoyo de las cuestiones así presentadas. La cuestión que ahora se trata de levantar por primera vez sobre cualquier incongruencia técnica entre la prueba y la negativa anterior de la demandada respecto a la existencia de un contrato, se

plantea demasiado tarde para que merezca seria consideración.

El segundo señalamiento es que la corte de distrito cometió error al resolver que el demandante dejó de cumplir su obligación contractual con la demandada por no haber elevado la fianza original a escritura pública.

El juez de distrito dijo que la prestación de una fianza "además de haber sido convenida por las partes" era un requisito estatutario. El error, de haberlo, en torno al efecto del artículo 23 de la Ley Hípica de 1932 (Leyes de ese año, págs. 195, 207) no sería suficiente motivo para su revocación. No podemos convenir con el apelante en que la demandada le impidió suministrar la fianza mediante escritura pública tal como se había provisto y conforme exigía el convenio provisional.

El tercer señalamiento es que la corte de distrito cometió error al resolver que la obligación de elevar el documento de fianza a escritura pública "era una obligación impuesta al demandante" y al resolver que por motivo del no cumplimiento de este requisito la corporación no debía continuar el contrato de agencia. Se sostiene que Buscaglia no fué parte en la fianza provisional otorgada por sus fiadores y aceptada por la demandada; que el haberse dejado de elevar la fianza provisional a escritura pública se hizo de mutuo consentimiento de las partes y que la continuación de la agencia durante varios meses posteriores a la fecha en que expiraron los quince días especificados en la fianza provisional equivalía a una renuncia por parte de la demandada; que el incumplimiento en una etapa (*stage*) de un contrato continuo no pone necesariamente fin a todo el contrato; que el incumplimiento de un contrato en sus detalles de menor importancia no ofrece base para la rescisión; que el único remedio de la demandada era exigir el otorgamiento de la escritura pública por los fiadores de Buscaglia. Las únicas autoridades citadas

en el alegato del apelante son Third Decennial Digest, vol. 8, párr. 235; *Collins Plass Thayer Co.* v. *Hewlett*, 95 S.E. 510 y *Dold Packing Co.* v. *Doerman*, 293 Fed. 315.

El juez de distrito resolvió que Buscaglia, por razón de su contrato verbal con la demandada, estaba obligado a prestar inmediatamente una fianza provisional que debía otorgarse en forma definitiva mediante escritura notarial, dentro del término de quince días. Esta conclusión no ha sido señalada como error. Buscaglia no fué relevado de la obligación asumida por él en su contrato oral, por el hecho de que él mismo no firmó la fianza provisional otorgada por sus fiadores. Si el juez de distrito al referirse más tarde a la obligación ''impuesta al demandante'' estaba, conforme asume el apelante, interpretando la fianza original, y si cometió error, según sostiene ahora el apelante, el error no es uno que da lugar a la revocación.

El quinto señalamiento es que la corte de distrito cometió error al no dar valor probatorio a la carta en que la demandada recordaba a Buscaglia del convenio de no aumentar el precio de los cuadros y papeletas para las carreras que próximamente iban a celebrarse. Podría admitirse que la suscribiente de la carta tenía en mente la posibilidad de un alza en los precios luego de celebrarse las próximas carreras. Lo que el juez de distrito dijo fué que la carta no implicaba una autorización para la venta de cuadros y papeletas a un precio mayor que el fijado por el Hipódromo Las Monjas. No hallamos que en esto se cometiera error. La carta no milita tan fuertemente contra el testimonio que tiende a establecer la existencia del convenio de no vender a precios más altos que aquéllos a que Las Monjas vendía, en forma tal que justifique la revocación del fallo de la corte de distrito al efecto de que la preponderancia de toda la prueba sobre este punto estaba a favor de la demandada.

El cuarto señalamiento es que la corte de distrito cometió error al resolver que la evidencia en cuanto al importe de

los daños reclamados era insuficiente para fundamentar en ella una sentencia a favor del demandante. No es necesario que discutamos este punto.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.